Angelo SCOPEL, Jo–Ann Scopel, and Darren A. Scopel, Appellants,

v.

**DONEGAL MUTUAL INSURANCE COMPANY, Appellee.**

Superior Court of Pennsylvania.

Argued May 22, 1997.

Filed July 25, 1997.

Louis C. Long, Butler, for appellee.

Before McEWEN, President Judge, and KELLY and OLSZEWSKI, JJ.

OLSZEWSKI, Judge.

In July of 1990, Darren Scopel was accosted and severely beaten by Gregory Shankle and two of his cohorts. This unprovoked attack, which resulted in extensive injuries to Scopel, prompted Scopel and his parents to file a civil lawsuit against the unruly threesome. In the underlying complaint supporting the suit, the Scopels alleged that Shankle willfully, maliciously and intentionally assaulted Darren Scopel; no averment was made that Shankle's actions were the result of reckless or negligent behavior. Both compensatory and punitive damages were sought.

At the time of this unfortunate attack, Shankle was insured under a homeowners' insurance policy issued by Donegal Mutual Insurance Company to Shankle's parents. In addition to protecting against loss or damage to personal property, the policy provided $100,000 in personal liability insurance for, *inter alia*, bodily injuries to third persons accidentally caused by an insured.

Based upon the averments contained in the Scopels' complaint, Donegal refused to defend and/or indemnify Shankle. In denying coverage, Donegal issued a reservation of rights letter, in which it justified its refusal to cover Shankle based upon the fact that the beating was intentional and, thus, not within the purview of the policy. Specifically, Donegal stated that two policy provisions supported its belief that Shankle was not contractually deserving of a defense. First, the insurer claimed that the assault did not constitute an "occurrence" within the meaning of the policy because the incident was not accidental.[1] Additionally, because the injuries were intended by the accused insured, Donegal stated that the policy's intentional acts

Neal A. Sanders, Butler, for appellants.

1. The relevant portion of the insurance policy upon which Donegal relies reads as follows: "occurrence" means an accident, including exposure to conditions, which results, during the policy period, in:

   a.  bodily injury; or
   b.  property damage.
Donegal/Shankle Insurance Policy at 1; R.R. at 53.

exclusion precluded coverage.[2]

Shankle then retained private counsel and proceeded to defend against the Scopels' suit. In the spring of 1993, the Scopels deposed several witnesses to the beating as well as Shankle's lawless compatriots of that fateful afternoon. As a whole, the deposition testimony established that Shankle and his friends had been drinking during the hours just prior to the attack and had accosted another man earlier that afternoon.

These depositions, however, were never filed and made a part of the official record. Moreover, although the deposition testimony put the Scopels on notice that they potentially had a cause of action sounding in negligence and/or recklessness, the original complaint was never amended to excise or modify the intentional and malicious flavor of the averments.

Two years thereafter, in June of 1995, the parties reached a settlement whereby, in exchange for a full and final release of the claim against him, Shankle agreed to the entry of a $100,000 consent judgment. Additionally, Shankle executed an assignment of his insurance policy rights in favor of the Scopels.

On October 23, 1995, the Scopels, as assignees of Shankle's insurance policy, filed a praecipe for a writ of summons against Donegal, thereby commencing the instant action. In their subsequent complaint, the Scopels averred that, by virtue of its denial of coverage, Donegal breached its contract with Shankle.

Donegal denied all liability and, in August of 1996, filed a motion for summary judgment in which it contended that its denial of coverage was proper because the complaint in the underlying action solely averred intentional tortious conduct for which the insured was not covered. In their brief in opposition to Donegal's motion, the Scopels admitted that Donegal did not initially have a duty to defend Shankle because the complaint's allegations did not fall within the policy's purviews. Scopels' brief in opposition to motion for summary judgment at 7; R.R. at 115.

The Scopels argued, however, that such a duty arose in 1993, two years after commencement of the underlying action, when deposition testimony revealed that Shankle may have been intoxicated during the assault and, thus, have acted without the requisite intent. *Id.* Further, acknowledging that an insurer's duty to defend is triggered when a complaint comprehends an injury potentially within the scope of the policy, and that the underlying complaint against Shankle was never amended to negate or modify its intentional character, the Scopels asked the court to extend the existing law to allow an insurer's duty to be triggered where "evidence gleaned during the course of the action indicates the presence of a viable claim that would be within the scope of the policy." *Id.* at 8; 116. In support of its argument that Donegal owed Shankle a duty to defend and indemnify in the underlying action, the Scopels attached to their brief in opposition the four unfiled 1993 depositions, all of which contained information relating to Shankle's intoxicated state on the day of the assault.

On September 25, 1996, the Honorable Edwin J. Snyder granted Donegal's motion for summary judgment. In so doing, the court held that the Scopels' failure to amend their original, underlying, complaint was fatal to their present claim. Donegal, the court reasoned, was never put on notice that the Scopels were pursuing an alternative or additional theory of relief that was potentially within the confines of the policy.

In their instant appeal, the Scopels argue that the lower court erred in finding that the underlying, unamended, complaint did not state a claim potentially within the parameters of the insured's policy. As an alternative, the Scopels reassert their argument that Donegal's duty to defend Shankle arose after the discovery evidence revealed the possibili-

---

**2.** In this regard, the policy reads as follows:
Medical Payments to Others do not apply to bodily injury or property damage:
a. which is expected or intended by the insured.

Donegal/Shankle Insurance Policy at 10; R.R. at 62.

ty that Shankle acted negligently or recklessly.

Conversely, Donegal argues that, in determining whether an insurer must defend and/or indemnify a policyholder, the four corners of the complaint control. That is, the depositions relied upon by the Scopels, even if properly filed, were irrelevant because the information contained therein was not utilized to amend the original complaint. Therefore, Donegal contends, it did not have a duty to defend and/or indemnify Shankle.

■ When reviewing the propriety of a trial court's order granting summary judgment, we must view the record in the light most favorable to the adverse party and determine whether the moving party has established that there exists no genuine issue of material fact and that it is therefore entitled to judgment as a matter of law. Because an order favorable to the moving party will prematurely end an action, summary judgment is only appropriate in the clearest of cases. *See, e.g., Skipworth v. Lead Industries Assoc.*, 547 Pa. 224, 230, 690 A.2d 169, 171 (1997); *Kingston Coal Co. v. Felton Mining Co., Inc.* 456 Pa.Super. 270, 277, 690 A.2d 284, 287 (1997).

■ It is well-established that an insurer's duty to defend is more encompassing than the duty to indemnify. *See, e.g., Erie Insurance Co. v. Claypoole*, 449 Pa.Super. 142, 154–56, 673 A.2d 348, 355 (1996); *Antrim Mining, Inc. v. Pennsylvania Insurance Guaranty Assoc.*, 436 Pa.Super. 522, 527–29, 648 A.2d 532, 535 (1994). Therefore, if Donegal had no duty to defend Shankle on the merits of the underlying action, it could not later be required to indemnify Shankle, or his assignees, against the subsequent $100,000 consent judgment which, by settlement, ended the underlying suit.

■ Additionally, it has long been the law of our Commonwealth that the nature of the allegations contained in a complaint control whether an insurer must defend a policyholder. *See, e.g, Claypoole*, 449 Pa.Super. at 154–56, 673 A.2d at 355; *Aetna Casualty and Surety Co. v. Roe*, 437 Pa.Super. 414, 422, 650 A.2d 94, 98 (1994); *Antrim Mining*, 436 Pa.Super. at 527–29, 648 A.2d at 535. That is, the "insurer is obligated to defend if the factual allegations of the complaint on its face comprehend an injury which is actually or potentially within the scope of the policy." *Roe*, 437 Pa.Super. at 422, 650 A.2d at 99.

■ With this in mind, we review the Scopels' initial averment, in which they contend that the trial court erred in finding that the original complaint in the underlying action did not present a claim which triggered Donegal's duty to defend Shankle. In support of this claim, the Scopels argue that, because "the element of intent in an assault and battery can be satisfied by recklessness," Donegal wrongfully denied coverage when it concluded that the incident in question was not an accident. Scopels' brief at 16.

This argument, while superficially enticing, proves to be specious for, in focusing attention upon the *cause of action* pled, the Scopels run afoul of our caselaw, which dictates that the *factual averments* contained in a complaint determine whether an insurer must defend. Therefore, while it is true that an assault may be proven by showing that the miscreant acted recklessly, it is equally true that the Scopels never alleged that Shankle so acted. Rather, the lengthy complaint filed in the underlying action is replete with accusations which accuse Shankle of acting intentionally, willfully and maliciously. In fact, the infractions complained of were so egregious that the Scopels prayed for a punitive damage award.[3]

---

3. Examples of the intentional behavior alleged by the Scopels' in their underlying complaint against Shankle include:

67. Defendant, Greg Shankle, willfully, intentionally, and with force, assaulted the Plaintiff, Darren A. Scopel, and wrongfully struck him with [h]is fist in the face and on the body, cutting, bruising and injuring his face and head and injuring his back.

68. The intentional acts on the part of the Defendant, Greg Shankle, caused the Plaintiff, Darren A. Scopel, emotional and mental distress.

Donegal's motion for summary judgment at 2–3; R.R. at 41–42.

After critically reviewing the underlying complaint, we agree with the trial court that the factual averments contained therein did not portend an accidental injury. Indeed, given the powerful language utilized, it is difficult to imagine that another theory of liability was being propounded. Donegal, therefore, did not breach its contract with Shankle when, based upon the factual averments contained in the underlying complaint, it refused to provide the tortfeasor with a defense.

Next, we address the Scopels' claim that Donegal's duty to defend Shankle was triggered in 1993, after the deposition testimony procured by the Scopels' revealed that Shankle may have been intoxicated during the altercation. This argument is flawed in several respects and, accordingly, cannot provide the Scopels with an avenue of relief.

First, the oft-stated standard for trial court evaluation of summary judgment motions requires the court to consider the factual averments contained in the relevant pleadings filed to date in the case. *See, e.g.,* Pa.R.C.P. 1035.2. It is axiomatic that the pleadings which the Rule contemplates be filed of record. This requirement is crystallized in Pa.R.C.P. 1035.3, which mandates that the non-moving party respond to the movant's motion by identifying, *inter alia,* "one or more issues of fact arising from evidence *in the record* controverting the evidence cited in support of the motion." Pa. R.C.P. 1035.3(a)(1) (emphasis added).

■ It is true that subsection (b) of Rule 1035.3 permits the adverse party to supplement the record in order to set forth reasons why summary judgment should not be granted; however, because litigants' briefs are not part of the official record, such supplementation cannot be achieved through mere attachment to a party's brief in opposition. *See, e.g., Erie Indemnity Co. v. Coal Operators Casualty Co.,* 441 Pa. 261, 263–66, 272 A.2d 465, 466–67 (1971) (brief filed in support of motion for summary judgment, which included factual averments not contained in the pleadings, could not be considered by the trial court.). *See also DiLucente Corp. v. Pennsylvania Roofing Co., Inc.,* 440 Pa.Super. 450, 454–56, 655 A.2d 1035, 1037 (1995)

(Appellate court may not consider materials submitted in briefs but not duly certified in the record); *Starr v. Zdrok & Zdrok, P.C.,* 419 Pa.Super. 60, 64–65, 614 A.2d 1209, 1212 (1992) (same).

■ Moreover, assuming that the Scopels had properly supplemented the certified record, we find no reason to expand the well-reasoned and long-standing principle that an insurer's duty to defend is triggered, if at all, by the factual averments contained in the complaint itself. *See Claypoole; Antrim; Roe, supra.* Were this not the case, an insurer would be required to monitor the pre-trial developments of a case in which coverage was denied to insure that no discovery sheds light upon a possible claim for which a defense is mandated. We find this result unworkable and unacceptable, for the rightful denial of coverage based upon a filed complaint should relieve an insurer of the duty and burden of tracking the developments of a case in which the insurer has no legal interest.

We believe that the better-reasoned approach is to require a plaintiff asserting a new theory of liability premised upon discovery evidence to file an amended complaint reflecting those factual averments. After reviewing the amended complaint, the insurer must then decide whether the supplemental factual allegations do, in fact, require the insurer to defend the policyholder.

The present case presents a fine example of the perils imbedded in the Scopels' proposed expansion. On July 18, 1990, based upon the factual averments contained in the complaint, Donegal denied Shankle coverage. Three years thereafter, the Scopels' conducted the depositions in question, which alerted the Scopels to the possibility that Shankle acted negligently, rather than intentionally, during the assault. Another two years expired before a settlement was reached in the underlying case and the instant action was commenced.

In this suit, which was filed fully five years after Donegal denied coverage, the Scopels' asserted, for the first time, that Shankle negligently inflicted Darren Scopel's wounds. While the Scopels assert that Donegal should

have been aware in 1993 that it was required to defend Shankle, they do not explain how the depositions, whether filed or unfiled, would, of themselves, provide such notice. Additionally, we find incredible the Scopels' vacuous assertion that time did not permit amendment of the complaint. Scopels' brief in opposition to motion for summary judgment at 8; R.R. at 116. Two years elapsed between the taking of the depositions and the final settlement; surely, this is ample time within which to amend one's complaint.

We therefore reject the Scopels' argument that, in considering whether an insurer's duty to defend a policyholder has been triggered, consideration may be given to factual averments contained in discovery evidence but not reflected in the complaint itself. Rather, as has long been the law in our Commonwealth, the allegations included within the four corners of the complaint must be dispositive of an insurer's duty to defend.[4]

Order affirmed; jurisdiction relinquished.

McEWEN, President Judge, filed a concurring statement.

McEWEN, President Judge, concurring.

Since I am unable to agree that the purposeful beating of another individual, while under the influence of alcohol or any other intoxicant, could ever constitute negligent behavior, rather than such intentional criminal conduct as precludes coverage, I CONCUR IN THE RESULT.

---

4. We cite with approval the case of *I.C.D. Industries, Inc. v. Federal Insurance Co.*, 879 F.Supp. 480 (1995), in which the court, faced with an argument similar to the present appeal, held that:

> Under Pennsylvania law the allegations contained in the complaint are the sole points of reference for determining whether a claim comes within the scope of the coverage under an insurance policy. Consequently, extrinsic

evidence, such as discovery requests or questions asked by counsel at a deposition, need not be considered when determining whether a particular claim falls within the scope of a policy.

*Id.* at 487. While the decisions of our sister federal courts are not binding precedent, we find the *I.C.D.* decision, which is founded upon a thorough review of Pennsylvania jurisprudence, to be persuasive authority on this issue.