725 A.2d 743

**MUTUAL BENEFIT INSURANCE COMPANY, Appellant,**

**v.**

**Joseph B. HAVER t/a Haver Pharmacy, John Macko and Candace M. Macko, his Wife, Appellees.**

Supreme Court of Pennsylvania.

Argued Sept. 15, 1998.

Decided March 5, 1999.

Carol A. Carolla, Pittsburgh, for Mutual Benefit Ins. Co., appellant.

John E. Nickoloff, Library, for Joseph Haver t/a Haver Pharmacy.

Matthew Taladay, DuBois, for John and Candace Macko.

Before FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE, NIGRO and NEWMAN, JJ.

## OPINION

ZAPPALA, Justice.

We granted allocatur to address the issue of whether an insurance carrier has a duty to defend and possibly indemnify an insured pharmacist against a claim that is based upon his distribution of controlled substances, when the insurance poli-

cy explicitly excludes coverage for bodily injuries which are a consequence of "knowing endangerment" by the pharmacist. We hold that the carrier has neither a duty to defend nor a duty to indemnify.

On December 2, 1993, John and Candace Macko, Appellees, filed a complaint against Joseph B. Haver, who is also an Appellee, seeking recovery for damages allegedly sustained by Candace Macko as a result of Haver's distribution of medications without any prescription. The complaint specifically alleged that Haver dispensed, among other things, Codeine, Demerol, barbiturates, sedative hypnotics, sleeping pills, Valium, and Tylox (Percocet), to Mrs. Macko, and that he ignored requests, which were made by both John Macko and Mrs. Macko's mother, that he cease dispensing the drugs to her. The complaint also alleged that Mrs. Macko's personal physician and psychologist contacted Haver and advised him not to provide her with any further medications, but that Haver continued to do so. Haver submitted the Mackos' complaint to his insurance carrier, Mutual Benefit Insurance Company, Appellant.

Mutual Benefit filed a Complaint for Declaratory Judgment asserting that it was not required to defend or indemnify Haver because the insurance policy contained the following provision:

Section IIC, Liability Not Insured

6. ENDANGERMENT OR HARM

We do not cover bodily injury or property damage whether or not expected or intended by the insured, *which is a consequence of an insured's willful harm or knowing endangerment.* This does not prohibit modification of this provision if done by us in writing.

R.R. at 37a (emphasis omitted) (emphasis added). Mutual Benefit argued that Mrs. Macko's injuries were a consequence of Haver's "knowing endangerment" of her via his distribution of the contraband to her. Mutual Benefit also filed a motion for summary judgment against the Mackos on the same grounds as its declaratory action. The Mackos responded

with their own motion for summary judgment. They argued that their complaint alleged negligence, not willful, knowing conduct, that the policy contained an endorsement which covered the type of conduct alleged in their complaint against Haver, and that any inconsistencies between the exclusionary language relied upon by Mutual Benefit and the endorsement must be resolved against Mutual Benefit, since it drafted the policy. The trial judge denied Mutual Benefit's motion and granted the Mackos' motion, and, in doing so, held that Mutual Benefit was obligated to both defend Haver and indemnify him for any damages assessed pursuant to the Mackos' underlying complaint.

A Superior Court panel affirmed with respect to Mutual Benefit's duty to defend, but reversed with respect to its duty to indemnify, holding that it would be premature to decide that issue. Judge Saylor, now Justice Saylor, dissented from the panel's decision, since, in his view, Mutual Benefit should not have been obligated to defend or indemnify Haver in the Mackos' underlying lawsuit. We granted Mutual Benefit's Petition for Allowance of Appeal and now reverse Superior Court's Order requiring Mutual Benefit to defend Haver. We also hold that Mutual Benefit does not have a duty to indemnify Haver under the terms of its insurance contract with him.

A carrier's duties to defend and indemnify an insured in a suit brought by a third party depend upon a determination of whether the third party's complaint triggers coverage. *General Accident Insurance Co. of America v. Allen*, 547 Pa. 693, 706, 692 A.2d 1089, 1095 (1997); *Wilson v. Maryland Casualty Co.*, 377 Pa. 588, 595, 105 A.2d 304, 307 (1954). Haver and the Mackos argue that coverage is triggered and that the knowing endangerment exclusion to coverage is not implicated by the Mackos' complaint because the complaint does not contain allegations of willful or knowing misconduct by Haver, but instead, asserts claims of negligence in conduct that was below the standard of care required of a pharmacist. However, the particular cause of action that a complainant pleads is not determinative of whether coverage has been triggered. Instead it is necessary to look at the

factual allegations contained in the complaint. *See Scopel v. Donegal Mutual Insurance Co.,* 698 A.2d 602 (Pa.Super.1997); *Aetna Casualty and Surety Co. v. Roe,* 437 Pa.Super. 414, 422, 650 A.2d 94, 98 (1994). We agree with Mutual Benefit that to allow the manner in which the complainant frames the request for redress to control in a case such as this one would encourage litigation through the use of artful pleadings designed to avoid exclusions in liability insurance policies. Appellant's Brief at 18. Accordingly, we now consider the factual allegations contained in the Mackos' complaint to determine whether coverage was triggered under the policy at issue. More specifically, we must determine whether the factual allegations in the complaint fall within the knowing endangerment exclusion to coverage that is contained in the policy. Count One of the complaint avers that Haver provided Mrs. Macko with the numerous prescription medications even though she lacked prescriptions. It goes on to allege that Mrs. Macko's family members, personal physician and psychologist contacted Haver and advised him to stop giving her the drugs, but that Haver nonetheless continued to do so. We find that these factual allegations against a pharmacist constitute "knowing endangerment" as a matter of law, and therefore the knowing endangerment exclusion in the policy prevents Mutual Benefit from having to defend or indemnify[1] Haver.

■ In reaching this conclusion, we reject the argument that the policy is ambiguous because it contains, in conjunction with the exclusionary language, an endorsement providing coverage for "professional liability," which is defined in the policy to include "malpractice." The Mackos cite *Black's Law Dictionary,* Sixth Edition, 1991, for the definition of malprac-

1. Because we have determined that the Mackos' factual allegations constitute knowing endangerment as a matter of law, and, therefore, Mutual Benefit need not defend Haver against the Mackos' complaint, we do not find it premature to also find that, if proven, those same facts would still constitute knowing endangerment as a matter of law and Mutual Benefit would not have a duty to indemnify Haver either. *See General Accident Insurance Co. of America v. Allen,* at 706, 692 A.2d at 1095 (recognizing that the duty to defend is separate from and broader than the duty to indemnify).

tice, which, in the last line of its definition includes "any professional misconduct, unreasonable lack of skill or fidelity in professional or fiduciary duties, evil practice, or illegal or immoral conduct." The Mackos, and to some degree Haver, conclude that this definition of malpractice is inconsistent with the language in the policy excluding coverage for knowing endangerment, and, therefore, the resultant ambiguity must be resolved against Mutual Benefit, as the drafter of the policy, and in favor of coverage. Their argument is that the terms evil practice, illegal conduct, and immoral conduct imply that intentional acts are a part of malpractice and therefore covered under the endorsement, while at the same time such intentional conduct contradicts the "knowing" portion of the knowing endangerment exclusion contained in the policy.

We reject this argument for a number of reasons. First, irrespective of how *Black's Law Dictionary* defines the term "malpractice," we have described malpractice as consisting of "a negligent or unskillful performance by a physician of the duties which are devolved incumbent upon him on account of his relations with his patients, or of a want of proper care and skill in the performance of a professional act." *Hodgson v. Bigelow,* 335 Pa. 497, 504, 7 A.2d 338, 342 (1939).[2] This definition does not extend to the evil and illegal conduct relied upon by the Mackos and Haver. Therefore, there is no ambiguity created by the use of that term in the endorsement providing coverage for professional liability and the knowing endangerment exclusion in the policy. Second, when we are interpreting a contract such as the insurance policy in this case, our duty is to "ascertain the intent of the parties as manifested by the language of the written agreement." *Standard Venetian Blind Co. v. American Empire Insurance Co.,* 503 Pa. 300, 305, 469 A.2d 563, 566 (1983). The context in which the term malpractice was used in the endorsement, as

2. The fact that *Hodgson* involved a malpractice suit against a physician, rather than a pharmacist, has no bearing on the proposition for which we cite the case. *Hodgson* illustrates this Court's longstanding interpretation of the term "malpractice" as constituting a failure to exercise a proper level of care or skill, rather than including the evil or illegal conduct contained in the definition found in *Black's Law Dictionary.*

well as the more common usage of the term, support the conclusion that when Haver and Mutual Benefit entered into this contract neither party intended to have it cover conduct such as that alleged in the Mackos' complaint (i.e., illegal distribution of prescription drugs). The definition of professional liability found in the endorsement states:

> C. *Professional liability* includes error or omission, malpractice, or mistake in connection with rendering or failure to render professional services at *your* retail drug store.

R.R. at 46 (emphasis in original policy). This language clearly indicates that the term malpractice was intended to cover negligent conduct, rather than intentional misconduct as advocated by Appellees.[3] Finally, any ambiguity arising from the use of the term malpractice in the endorsement, as a result of the potentially evil or illegal connotation that might be attributable to that term, is illusory, since it would be against the public policy of this Commonwealth to permit a carrier to offer insurance for damages assessed as a result of evil or illegal conduct.[4]

**3.** We disagree with Superior Court's statements that "if an act is excluded [under the policy] simply because it was non-accidental, an insurance policy like the instant one would exclude coverage for virtually all claims against a profession. We think that this is beyond contemplation of the parties." Slip Op. at 6. To the contrary, there are a plethora of claims that a policy such as this one would cover, notwithstanding the fact that it does not cover the particular claim in this case. For example, the policy would still cover claims stemming from a pharmacist's accidental issuance of a prescription to the wrong customer, or a pharmacist who negligently adds too much or too little of a chemical to a mixture that is subsequently dispensed to a customer. We believe that it was beyond the contemplation of the parties that the policy would cover a pharmacist who continuously dispenses drugs to an individual without a prescription despite advice to the contrary from the individual's personal physician.

**4.** Such public policy may not preclude a pharmacist from obtaining coverage for the costs of defending suits based upon alleged illegal or evil conduct. However, no argument was presented that Haver thought he had purchased a policy covering such costs. Instead, the parties have only raised arguments disputing whether the policy covers the conduct alleged in the Mackos' complaint. Accordingly, we express no opinion on the validity of a policy insuring "defense costs" related to a complaint alleging evil or illegal conduct.

Haver argues that there is no evidence of record in this case to support Mutual Benefit's allegation that Haver willfully harmed or knowingly endangered Mrs. Macko. As stated above, in determining whether a carrier has a duty to defend or indemnify an insured we look to the complaint filed against the insured. Thus, our determination that the factual allegations in the Mackos' complaint against Haver constitute knowing endangerment as a matter of law, makes this argument moot, since there need not be evidence on the record for us to make this decision. For the same reason, we reject the Mackos' argument that Haver's deposition testimony denying that he ever intended to harm Mrs. Macko prevents the knowing endangerment language from barring coverage.[5]

For the reasons discussed above, we reverse that portion of Superior Court's order requiring Mutual Benefit to defend Haver and affirm that portion of the order refusing to recognize a duty, on Mutual Benefit's behalf, to indemnify Haver for any damages assessed against him in the Mackos' action.

Justice SAYLOR did not participate in the consideration or decision of this case.

Justice NIGRO files a Concurring Opinion in which Justice NEWMAN joins.

Justice NEWMAN files a Concurring Opinion in which Chief Justice FLAHERTY joins.

NIGRO, Justice, concurring.

I join the Majority since I fully agree that Haver's conduct, as alleged in the Mackos' complaint, falls within the "knowing endangerment" exclusion contained in the insurance policy, and therefore, that Mutual Benefit has no duty to either defend or to indemnify Haver. The Mackos' complaint essentially alleges that Haver supplied Candace Macko with dangerous and addictive drugs, without prescription, despite

---

5. We likewise need not address the parties' arguments whether Haver's guilty plea to federal drug charges has any bearing on this litigation, since we have based our decision solely upon the factual allegations in the Mackos' complaint against Haver.

knowledge of her addiction and requests by her family and physician to stop. As the Majority concludes, these allegations constitute allegations of "knowing endangerment."

I write separately, however, to note that previous to the filing of the Mackos' lawsuit, Haver pled guilty to federal criminal charges of "knowingly, intentionally, and unlawfully" distributing controlled substances to Candace Macko under 21 U.S.C. § 841(a)(1). While outside the four corners of the complaint, this guilty plea to intentional and knowing actions clearly demonstrates, in my view, that Haver's conduct knowingly endangered Candace Macko. In light of Haver's guilty plea, I find Appellees' argument that the allegations in the Mackos' complaint are allegations of negligence, rather than intentional or knowing conduct, completely disingenuous. The circumstances in this case simply do not support Appellees' attempt to paint the complaint as one that alleges negligence, so as to place it within the policy's coverage.

Justice NEWMAN joins in the concurring opinion.

NEWMAN, Justice, concurring.

I join the majority because I agree that Mutual Benefit has no duty to either defend or to indemnify Haver as the conduct at issue falls within the "knowing endangerment" exclusion contained within the policy of insurance. I further agree with the concurring opinion of Mr. Justice Nigro that Haver, having pled guilty to the federal criminal charges, cannot credibly argue that the allegations in the complaint sound in negligence.

In this statement, I write separately, however, because I believe that in analyzing this matter, we should not concentrate simply on the criminal actions of Haver and whether his conduct fits within the exclusion contained in the policy of insurance. According to the facts of this case, I believe that regardless of the averments in the complaint or the language of the policy of insurance, it is against public policy to allow insurance coverage for an illegal drug transaction. My reading of the record before us is that Ms. Macko is a substance

abuser who illegally bought a large quantity of controlled substances without a prescription from Haver for a period of approximately four years. Ms. Macko's conduct, as well as Haver's, was part of an illegal drug transaction, and is no less so because Haver was a pharmacist rather than a street corner pusher. *See, e.g., Commonwealth v. Gordon,* 511 Pa. 481, 515 A.2d 558, 560–61 (1986) (pharmacist engaging in illicit and clandestine drug deals for prescription drugs is like common "street pusher"). There is little difference between this case and the case of drugs on the corner, and we should not treat it differently. *Id.*

It is my opinion that the public policy of this Commonwealth does not allow insurance coverage for a criminal venture where one who has participated in criminal acts by obtaining drugs illegally can recover from the other participant's insurance carrier simply because the result of the crime had bad or unintended results for one of the participants. I am mindful that this court should not lightly formulate judicial pronouncements of public policy. *Muschany v. United States,* 324 U.S. 49, 60, 65 S.Ct. 442, 89 L.Ed. 744 (1945); *Guardian Life Insurance Company of America v. Zerance,* 505 Pa. 345, 479 A.2d 949, 954 (1984); *Mamlin v. Genoe,* 340 Pa. 320, 17 A.2d 407, 409 (1941). However, in the circumstances of this case, I believe that both the legislature and the courts of this Commonwealth have uniformly held that the drug transaction that occurred here is against the public's health, safety, morals, and welfare. *See, e.g.,* 35 P.S. Sections 780–113(a)(12), (14) and 780–113(f) (possession and sale of controlled substances by means of fraud, forgery, or misrepresentation, are felonies); *Commonwealth v. Sojourner,* 268 Pa.Super. 488, 408 A.2d 1108, 1111 (1979) (preventing and deterring unauthorized possession of controlled substances is purpose of Controlled Substances Act); *Commonwealth v. Garrick,* 210 Pa.Super. 124, 232 A.2d 8, 10 (1967)("The use of drugs is offensive to society precisely because of its effect on the person and the harm to which such use may lead.").

Thus, I would reverse the decision of the Superior Court because no circumstances should require an insurance carrier

to provide coverage for its insured's criminal acts that harm a participant in a crime who is injured because of her knowing involvement in a criminal enterprise.

Chief Justice FLAHERTY joins this concurring opinion.