**JERRY DAVIS, INC., Plaintiff,**

v.

**MARYLAND INSURANCE COMPANY, Defendant.**

**No. CIV.A. 99–904.**

United States District Court, E.D. Pennsylvania.

March 18, 1999.

of the consumer loans for the original commercial loan was as "a package" and not four separate transactions.

Sheryl R. Rentz, Wynnewood, PA, for Plaintiff.

Allan C. Molotsky, Post & Shell, P.C., Philadelphia, PA, for Defendant.

## MEMORANDUM & ORDER

KATZ, Senior District Judge.

Plaintiff Jerry Davis, Inc. (JDI) seeks a declaration that its insurer, Maryland Insurance Company (Maryland), is required under its "Commercial General Liability" policy to indemnify it in a lawsuit against it in state court. Before the court is Maryland's motion to dismiss and plaintiff's response thereto.

*Factual Background* [1]

JDI contracted with Nunzio Terra and Nufab Corporation, doing business as Gothum, The New City (referred to collectively as "Gothum"), to perform the electrical wiring work at a nightclub Gothum was building. JDI did the work and arranged for a bonding company to inspect it. The bonding company inspected and approved the work. Gothum opened its nightclub, only to be shut down five months later after an inspection by the City of Philadelphia's Department of Licenses and Inspections revealed a series of violations stemming from JDI's electrical work. Gothum was forced to remain closed for six months while a new contractor did extensive electrical work. Based on the financial hardship caused by the closing and additional work, the owners were forced to sell a

---

1. These facts are taken from plaintiff's complaint, as well as from the documents that plaintiff's complaint attaches and incorporates by reference.

percentage of their interest in the nightclub, resulting in further financial losses. *See* Compl.Ex. B ¶¶ 3–9.

Gothum filed suit against JDI and the bonding company in state court. The complaint contains counts purporting to state claims in negligence, breach of contract, fraudulent misrepresentation, breach of implied warranties, and breach of express warranties.[2] Upon notification of the suit, Maryland informed JDI that it had no duty to defend or indemnify JDI in the case. *See* Compl.Ex. C at 1. Among other reasons, Maryland explained, "The allegations as contained in the Complaint do not fall within the meaning of occurrence insured contract or property damage which are defined in your policy." *Id.* at 6. JDI filed this suit, seeking a declaration that Maryland is required to indemnify it in the Gothum suit.

*Legal Standards*

For the purposes of a 12(b)(6) motion to dismiss a complaint, this court must accept as true all the allegations of fact in plaintiff's complaint, must construe the complaint in the light most favorable to plaintiff, and must determine whether, under any reasonable reading of the pleadings, plaintiff may be entitled to relief. *See Nami v. Fauver*, 82 F.3d 63, 65 (3d Cir. 1996).

The court's first step is to determine the scope of the policy's coverage. The terms of the policy must be compared to the nature of the allegations in the complaint to determine whether, if the allegations are sustained, the insurer would be obligated to bear the expense of the judgment. *See Snyder Heating Co., Inc. v. Pennsylvania Mfrs. Assoc. Ins. Co.*, 715 A.2d 483,

484 (Pa.Super.1998). In determining whether the claims made by Gothum against JDI in the underlying lawsuit fall within the policy and thus trigger Maryland's duty to defend and indemnify, the court should look solely to the allegations of the complaint in the underlying action. *See, e.g., Pacific Indem. Co. v. Linn*, 766 F.2d 754, 760 (3d Cir.1985) ("The obligation to defend is determined solely by the allegations of the complaint in the action."); *Snyder Heating*, 715 A.2d at 484 ("The nature of the claim, rather than the actual details of any injuries suffered by the insured, determines whether the insurer is required to defend."); *Scopel v. Donegal Mut. Ins. Co.*, 698 A.2d 602, 605 (Pa.Super.1997) ("[T]he nature of the allegations contained in a complaint control.").

The court in *Britamco Underwriters, Inc. v. Stokes*, 881 F.Supp. 196 (E.D.Pa. 1995) summed up the relevant determination:

> If there is a possibility that any of the underlying claims could be covered by the policy at issue, the insurer is obliged to provide a defense at least until such time as those facts are determined, and the claim is narrowed to one patently outside of coverage. On the other hand, if there is no possibility that any of the underlying claims could be covered by the policy at issue, judgment in the insurer's favor with regard to the duty to defend and indemnification is appropriate.

*Id.* at 198.[3]

*Analysis*

JDI argues that Maryland has a duty to indemnify based on the following policy language:

---

**2.** These are the counts contained in the Amended Complaint filed February 12, 1997. Apparently the original complaint, which was still in effect at the time Maryland made its decision to deny coverage, contained additional counts. *See* Compl.Ex. C. at 2.

**3.** The court is aware that the body of case law it cites consists virtually entirely of cases decided on summary judgment motions rather

than on motions to dismiss. Given the clear rule that interpretation of an insurance contract is a matter of law for the court to decide, and given the command that all the court is to consider are the allegations in the complaint, no factual development is required for the determination to be made.

Plaintiff's declaratory judgment asks only for a determination as to Maryland's duty to

We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend any "suit" seeking those damages.... This insurance applies to "bodily injury" and "property damage" only if ... [t]he "bodily injury" or "property damage" is caused by an "occurrence".... 

Compl.Ex. A at 2 (policy Section IA ¶¶ 1(a), (b)). The policy defines "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." *Id.* at 14 (policy Section V, ¶ 13).

Maryland argues that Gothum's claims in the underlying complaint do not trigger Maryland's duty to defend or indemnify because they do not stem from an event that qualifies as an "occurrence" under the policy's definition and because the claims fall under a particular policy exclusion.[4] Plaintiff's response hangs its hat solely on the fact that Count One is a negligence claim and does not address the other Counts; the court will go further than that and consider each claim contained in the underlying complaint.

*Count Two: Breach of Contract*

In Count Two, plaintiff Gothum alleges JDI breached the parties' contract.

*See* Compl. ¶ 12. Contract claims are not covered by the policy. "The purpose and intent of such an insurance policy [general liability policy] is to protect the insured from liability for essentially accidental injury to the person or property of another rather than coverage for disputes between parties to a contractual undertaking." *Redevelopment Auth. of Cambria County v. International Ins. Co.*, 454 Pa.Super. 374, 685 A.2d 581, 589 (1996) (en banc). In fact, in Exclusion (m) the policy contains a provision making this point explicit:

This insurance does not apply to "property damage" to "impaired property" or property that has not been physically injured, arising out of (1) A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or (2) A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

Ex. B. at 4 (policy Section IA ¶ 2(m)). In other words, the policy explicitly states that the insurer does not have the obligation to defend or indemnify when the insured is sued for breach of contract.

In *Toombs NJ Inc. v. Aetna Cas. & Surety Co.*, 404 Pa.Super. 471, 591 A.2d 304 (1991), the court examined and gave

---

indemnify, but its response to the motion discusses both the duty to indemnify and the duty to defend. The court will consider both duties.

The duty to defend is a distinct obligation separate and apart from the duty to indemnify. The duty to defend arises whenever claims asserted by the injured party potentially come within the coverage of the policy, while the duty to indemnify arises only when the insured is determined to be liable for damages within the coverage of the policy. It follows then, that when the claims in the underlying action have not been adjudicated, the court entertaining the declaratory judgment action must focus on whether the underlying claims could potentially come within the coverage of the policy. *Stokes*, 881 F.Supp. at 198 (internal citations omitted); *see also I.C.D. Indus., Inc. v. Federal Ins. Co.*, 879 F.Supp. 480, 485 n. 5 (E.D.Pa. 1995) ("The duty to defend is triggered when-

ever the complaint states allegations that 'potentially fall within the coverage provided.' An insurer's duty to indemnify, however, requires a higher threshold, as that duty is triggered only when the claim is 'actually within the policy coverage.' "). Here, because the underlying claims have not been adjudicated, it follows that this court has no choice but to apply what is actually the test for duty to defend and determine whether the claims could potentially come within the coverage of the policy.

4. Maryland additionally argues that the claims do not involve "bodily injury" or "property damage" under the policy and that the claims do not fall under the "advertising injury" section of the policy. Because of the resolution on the "occurrence" and policy exclusion issues, it is not necessary for the court to reach these other arguments.

effect to a similar policy exclusion. The *Toombs* court was faced with an underlying complaint alleging that after complex lease negotiations, the insured backed out of the finalized deal, and the suit contained claims for breach of contract, detrimental reliance, and conversion of architectural designs. The court gave this explanation for why the policy did not provide coverage:

> The recovery sought relates to a breach of contract, not a tortious act. Appellants have not offered any precedent that indicates that indemnification is provided for such damages when a comprehensive liability policy is purchased, and for good reason. To allow indemnification under the facts presented here would have the effect of making the insurer a sort of silent business partner subject to great risk in the economic venture without any prospects of sharing in the economic benefit. The expansion of the scope of the insurer's liability would be enormous without corresponding compensation. There is simply no reason to expect that such a liability would be covered under a comprehensive liability policy which has, as its genesis, the purpose of protecting an individual or entity from liability for essentially accidental injury to another individual, or property damage to another's possessions, even if, perhaps, the coverage of the policy has been expanded to cover other non-bodily injuries that sound in tort.

*Id.* at 306; *see also Snyder Heating Co., Inc. v. Pennsylvania Mfrs. Assoc. Ins. Co.,* 715 A.2d 483, 487 (Pa.Super.1998) (reasoning that "[t]hese types of insurance policies involve risks that are limited in nature; they are not the equivalent of a performance bond on the part of the insurer," *citing Ryan Homes, Inc. v. Home Indem. Co.,* 436 Pa.Super. 342, 647 A.2d 939, 942 (1994)). Based on this exclusion, it is quite clear that the breach of contract claim in Count Two does not trigger Maryland's duty to defend or indemnify. *Count One: Negligence or Breach of Contract?*

In Count One, Gothum alleges that in fulfilling its contract to "provide all the materials and labor necessary to supply the various electrical conduits and wiring" at the property, Compl. ¶ 3, JDI performed "faulty and defective electrical work." *Id.* ¶ 7. The complaint then states, "As a direct and proximate result of the defendants' negligence, the plaintiffs have suffered damages...." *Id.* ¶ 10.

The courts must look past the nominal title of the allegations to the actual basis of the cause of action. That is, even if the allegations at issue label the incident as a tort of negligence, the court must examine the claim to determine if it is more appropriately designated as a contractual claim. As the Superior Court of Pennsylvania has explained, for a claim "to be construed as a tort action, the wrong ascribed to the defendant must be the gist of the action with the contract being collateral." *Redevelopment Auth. of Cambria County v. International Ins. Co.,* 454 Pa.Super. 374, 685 A.2d 581, 590 (1996) (en banc); *see also Factory Market, Inc. v. Schuller Int'l, Inc.,* 987 F.Supp. 387, 394 (E.D.Pa.1997) ("Under this test, a party cannot disrupt the expectations of the parties by supplanting their agreement with a tort action that claims that the party misperformed the agreement in question.").

The *Cambria* case is particularly instructive. A township and the Redevelopment Authority contracted that the Authority would own and operate the town's water system, administer certain funds, and provide the services necessary to supervise the construction of improvements to the water system. The township sued the Authority, the three-count complaint alleging that the Authority had failed to perform properly its contractual duties, had been negligent, and had been unjustly enriched. *See id.* at 583–84. Based on those allegations, the court ruled that the insurer had no duty to defend or indemnify because, even though the plaintiffs "employed negligence concepts in drafting

their complaint, it cannot be disputed that their claims arise out of and are based upon duties imposed upon the [defendant] solely as a result of the contract." *Id.* at 589.

The present case is similar to *Cambria:* In Count One, Gothum makes the identical contract claim as it makes in Count Two but uses the word "negligence." Although JDI attempts in its response to the motion to describe the claim as one alleging that JDI breached the duty of care owed by a contractor, that characterization does not comport with either the form of the pleading itself or the facts alleged therein. In fact, the contract claim in Count Two does not allege any additional or different facts from those in the "negligence" claim; instead, it incorporates the negligence claim by reference and then recharacterizes it as a breach of contract claim. That is the appropriate designation, and the fact that the word "negligence" is used in Count One is not enough to make that claim involve an "occurrence" and trigger the policy's coverage provisions. As the gist of the claim set forth in Count One is a contract claim, it does not trigger coverage for the reasons discussed above with regard to Count Two.

*Counts Four and Five: Breach of Warranty*

■ In Count Four, plaintiff Gothum asserts, "In contracting with the plaintiffs to provide all the labor and materials necessary to perform the required electrical work, defendant JDI made certain implied warranties to the plaintiffs that such work and materials would be reasonably fit for the purpose intended, i.e. conforming with the relevant standards...." Compl. ¶ 17. Gothum further alleges that "JDI breached those warranties," and that "[a]s a direct and proximate result of the defendant's breach of implied warranties, the plaintiffs have suffered damages." *Id.*

¶¶ 18, 19. In Count Five, Gothum makes a similar claim that JDI breached express warranties "that the electrical work provided by the defendant would conform to the blue prints." *Id.* ¶ 21. Although in some contexts it is unclear whether breach of warranty claims sound in contract or tort, *see, e.g., Hahn v. Atlantic Richfield Co.,* 625 F.2d 1095, 1103 (3d Cir.1980) (citing Dean Prosser in support of the court's statement that such actions are "a freak hybrid born of the illicit intercourse of tort and contract"); in the context of this complaint against JDI it is clear that the breach of warranty claims arise out of the contract between JDI and Gothum and are a close relative of the breach of contract claim in Count Two. For the same reasons that Count Two claim fails to trigger insurance coverage, so do Counts Four and Five.

*Count Three: Fraudulent Misrepresentation*

■ In Count Three, plaintiff Gothum asserts that "JDI fraudulently misrepresented to the plaintiffs that the electrical work it completed conformed to the blue prints." ¶ 14. Under Pennsylvania tort law, one element of fraudulent misrepresentation is, of course, an intention to defraud. *See Scaife Co. v. Rockwell–Standard Corp.,* 446 Pa. 280, 285 A.2d 451, 454 (1971) (listing the elements of fraudulent misrepresentation as including a "fraudulent utterance" of a "misrepresentation" made with "an intention by the maker that the recipient will thereby be induced to act," as well as justifiable reliance and damages). Intentional acts such as misrepresentation are not covered as an occurrence under policies of liability insurance.[5] As the Pennsylvania Supreme Court succinctly explained in *Gene and Harvey Builders, Inc. v. PMA Insurance Co.,* 512 Pa. 420, 517 A.2d 910, 913 (1986),

---

5. Although Maryland does not rely on it in its motion, the policy contains an exclusion giving effect to this rule: "This insurance does not apply to ... '[b]odily injury' or 'property damage' expected or intended from the standpoint of the insured." Compl.Ex. A at 2 (policy Section IA ¶ 2(a)).

an intentional act cannot be a covered "occurrence" because "an intentional act is not an accident (and only accidents are covered)." *Id.* at 913; *see also United States Fidelity & Guar. Co. v. Korman Corp.,* 693 F.Supp. 253, 258 (E.D.Pa.1988) (holding that a count alleging misrepresentation is not covered by a policy that defines "occurrence" as "accident").

### Conclusion

Defendant correctly argues that it has no duty to defend or indemnify plaintiff in the underlying state court action; consequently, plaintiff's declaratory judgment action will be dismissed. An appropriate Order follows.

### ORDER

**AND NOW,** this 18th day of, upon consideration of the Motion to Dismiss of Defendant, and the response thereto, it is hereby **ORDERED** that the said motion is **GRANTED.** The complaint is **DISMISSED.**