[759 NYS2d 42]

NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA., Appellant, v THE PEP BOYS—MANNY, MOE & JACK, Respondent.

First Department, April 29, 2003

**APPEARANCES OF COUNSEL**

*Bruce M. Strikowsky* of counsel (*Eric A. Portuguese* on the brief; *Lester Schwab Katz & Dwyer, LLP*, attorneys), for appellant.

*Lisa M. Cobb* of counsel (*Robert B. Bodzin* on the brief; *Schnader Harrison Segal & Lewis LLP*, attorneys), for respondent.

## OPINION OF THE COURT

ELLERIN, J.

This appeal requires us to determine whether plaintiff insurer has a duty under the commercial general liability insurance policy held by defendant operator of a nationwide chain of automobile parts and service stores to defend and indemnify defendant in an action alleging that defendant sold used and old car batteries as new ones to unsuspecting consumers. We hold, upon analysis of the scope of the coverage of the policy, construed under Pennsylvania law, and of the allegations in the underlying complaint, that plaintiff has no such duty. Accordingly, we reverse the order granting defendant's motion for summary judgment dismissing plaintiff's declaratory action and denying plaintiff's cross motion and we grant judgment declaring that plaintiff has no duty to defend or indemnify defendant in the underlying action.

In May 1996, Brian Lee and other plaintiffs brought an action against defendant in Alabama (the Alabama Action) seeking to certify a class consisting of "[a]ll persons and entities in the United States that have purchased automotive batteries from Pep Boys at any time during the period May 5, 1990 to the present." The complaint alleged that defendant "developed a scheme to promote, offer, and sell old, used and 'out of warranty' automobile batteries to unsuspecting consumers as if the batteries were new." The *Lee* plaintiffs alleged, inter alia, that in implementation of the scheme defendant repackaged used and out-of-warranty batteries as new and "represented to consumers that the used, old and/or out-of-warranty Pep Boys batteries being sold to them were new and fresh." The complaint asserted six causes of action: fraud and deceit, negligent misrepresentation, breach of contract, violation of Pennsylvania Unfair Trade Practices and Consumer Protection Law and other state consumer protection statutes, and the necessity for equitable examination and/or testing of plaintiffs' batteries.

Defendant timely notified plaintiff National Union Fire Insurance Company, which provided defendant with commercial general liability insurance from June 30, 1989 through June 30, 1995, of the Alabama Action. Plaintiff refused to defend and subsequently brought this action, seeking a declaration

that it was not obligated to defend or indemnify defendant in the Alabama Action. The Alabama Action then was dismissed upon defendant's motion. Defendant argued that the *Lee* plaintiffs "do not allege anywhere in the Complaint that they even purchased 'old, used and/or out-of-warranty automotive batter[ies]' from Pep Boys, let alone that they actually suffered any injury." Defendant, however, expended approximately $356,000 to defend the Alabama Action.

The parties agree that Pennsylvania law governs interpretation of their insurance contract. Under Pennsylvania law, similar to New York law in this regard (*see Town of Massena v Healthcare Underwriters Mut. Ins. Co.*, 98 NY2d 435, 443-444 [2002]), "[a]n insurer's obligation to defend does not arise every time an insured is sued, but only when the underlying lawsuit falls 'within the coverage of the policy' " (*Philadelphia Contributionship Ins. Co. v Shapiro*, 2002 Pa Super 139, ¶ 26, 798 A2d 781, 786 [2002] [citation omitted]). Whether the *Lee* complaint alleged a cause of action that falls within the coverage of the insurance policy issued to defendant by plaintiff is determined solely by the terms of the policy and the factual averments of the complaint (*see e.g. Scopel v Donegal Mut. Ins. Co.*, 698 A2d 602, 605 [Pa 1997]). For the following reasons, we find that the *Lee* complaint did not present a claim that triggered plaintiff's duty to defend defendant.

The policy provides that plaintiff "will pay those sums that the insured [i.e., defendant] becomes legally obligated to pay as damages because of * * * 'property damage' to which this insurance applies." The policy states, "This insurance applies to * * * 'property damage' only if [t]he * * * 'property damage' is caused by an 'occurrence' * * *." "Property damage" is defined as "[p]hysical injury to tangible property, including all resulting loss of use of that property" or "[l]oss of use of tangible property that is not physically injured." "Occurrence" is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

The complaint in the Alabama Action, however, did not allege physical injury to tangible property or loss of use of noninjured tangible property. It did not allege that the old, used and/or out-of-warranty batteries were physically injured or that the plaintiffs lost the use of such batteries. The complaint alleged that the *Lee* plaintiffs thought they were purchasing new batteries but instead received old, used or out-of-warranty batteries, which offered poorer performance and were less valuable. This type of loss does not constitute "property dam-

age" (see e.g. *United States Fid. & Guar. Co. v Barron Indus., Inc.*, 809 F Supp 355, 360 [1992] ["economic losses * * * are intangible and thus, outside the 'property damage' definition"]; *Philadelphia Contributionship*, 2002 Pa Super 139, ¶ 30, 798 A2d at 787 ["Back pay, front pay and benefits do not constitute 'tangible assets' under the policy, and therefore any damage or loss thereto is not 'property damage' "]; *Kline v Kemper Group*, 826 F Supp 123, 130 [1993], *affd* 22 F3d 301 [1994] [lost pay and employment opportunities are "plainly not encompassed by the policy definition of property damage, which defines such damage as the injury to or destruction of tangible property"]).

In their claim under the Pennsylvania Unfair Trade Practices and Consumer Protection Law, the *Lee* plaintiffs alleged that they "and members of the Class have been damaged by defendant's practices described herein because they have suffered an ascertainable loss of money or property as a result of defendant's unlawful methods, acts or practices." However, "the particular cause of action that a complainant pleads is not determinative of whether coverage has been triggered. Instead it is necessary to look at the factual allegations contained in the complaint" (*Mutual Benefit Ins. Co. v Haver*, 555 Pa 534, 538-539, 725 A2d 743, 745 [1999]). While the allegation of "loss of money or property" may have satisfied the requirements of the Unfair Trade Practices and Consumer Protection Law (see Pa Stat Ann, tit 73, § 201-9.2 [a] ["Any person who purchases * * * goods * * * primarily for personal, family or household purposes and thereby suffers any ascertainable loss of money or property * * * as a result of * * * a method, act or practice declared unlawful by section 3 of this act, may bring a private action * * *"]), it did not offer facts that demonstrate property damage (see *Mutual Benefit*, 555 Pa at 539, 725 A2d at 745-746). The *Lee* plaintiffs' allegation that their claims "are typical of the claims of the Class because each plaintiff and all other members of the Class have sustained or will likely sustain damages and injuries arising out of their purchase of old, used and/or out-of-warranty automotive batteries" was similarly insufficient (see *Mutual Benefit, supra*, and cases cited therein).

The complaint also did not allege that the damage was caused by an "occurrence." While defendant does not argue that fraud is an "occurrence" as defined in the policy (see e.g. *Philadelphia Contributionship*, 2002 Pa Super 139, ¶ 32, 798 A2d at 787 ["Pennsylvania courts have held that an intentional act * * * can never be deemed an 'accident,' including for

purposes of an insurance policy"]), it contends that breach of contract, negligent misrepresentation, and violation of state consumer protection statutes do constitute occurrences. However, "[t]he purpose and intent of [a general liability] insurance policy is to protect the insured from liability for essentially accidental injury to the person or property of another rather than coverage for disputes between parties to a contractual undertaking" (*Redevelopment Auth. of Cambria County v International Ins. Co.*, 454 Pa Super 374, 391, 685 A2d 581, 589 [1996], *appeal denied* 548 Pa 649, 695 A2d 787 [1997]; *see also Jerry Davis, Inc. v Maryland Ins. Co.*, 38 F Supp 2d 387, 390 [1999] ["Contract claims are not covered by the policy"]; *Commerce & Indus. Ins. Co. v Snow Envtl. Servs., Inc.*, 1996 WL 750018, *3 n 1, 1996 US Dist LEXIS 19453, *11 n 1 [ED Pa, Dec. 30, 1996] [a commercial general liability policy "is not designed to provide coverage for breach of contract liability"]). Hence, under Pennsylvania law, a breach of contract is not an accident or occurrence covered by a commercial general liability insurance policy (*Redevelopment Auth.*, 454 Pa Super at 390-391, 685 A2d at 589).

Moreover, courts applying Pennsylvania law have held that, "if the 'gist' of the underlying claim sounds in contract, it does not trigger coverage, even if negligence concepts were employed in the underlying Complaint" (*Berg Chilling Sys. v Hull Corp.*, 2002 WL 1833351, *2, 2002 US Dist LEXIS 12281, *8-9 [ED Pa, Apr. 2, 2002] [citing cases]). In alleging that defendant passed off old batteries as new ones, the Alabama Action basically alleged fraud and breach of warranty. The *Lee* plaintiffs did not allege that defendant's product injured any other property, such as their cars, or that defendant's product caused any bodily injury. The Alabama Action simply was not the type of suit that commercial general liability insurance policies are intended to cover (*see Redevelopment Auth.*, 454 Pa Super at 392-393, 685 A2d at 590 [" 'To allow indemnification under the facts presented here would have the effect of making the insurer a sort of silent business partner subject to great risk in the economic venture without any prospects of sharing in the economic benefit' "]).

Defendant points out that causes of action for negligent misrepresentation and consumer fraud do not require proof of intent to misrepresent or to deceive, respectively (*see e.g. Bortz v Noon*, 556 Pa 489, 500-501, 729 A2d 555, 561 [1999]; *Commonwealth ex rel. Zimmerman v Nickel*, 26 Pa D & C 3d 115, 120 [1983]), and that the *Lee* plaintiffs alleged that defendant

acted negligently and/or recklessly as well as fraudulently, intentionally and maliciously. However, as indicated, it is the facts alleged in the complaint that determine whether an insurer must defend (*see Mutual Benefit*, 555 Pa at 538-539, 725 A2d at 745; *see also Jerry Davis*, 38 F Supp 2d at 391 ["The courts must look past the nominal title of the allegations to the actual basis of the cause of action"]). The complaint in the Alabama Action alleged that defendant developed a scheme to sell old batteries as new ones and implemented the scheme by repackaging old and/or used batteries and representing that they were new. These are not unintentional acts and hence did not trigger plaintiff's duty to defend (*see e.g. Scopel*, 698 A2d at 605-606 [while assault can be reckless as well as intentional, no duty to defend where factual allegations of complaint showed that assault was intentional]; *State Farm Fire & Cas. Co. v Dalrymple*, 153 F Supp 2d 624, 628 [2001] [no duty to defend where claims labeled "negligence" merely allege same facts as alleged in assault and battery and intentional infliction of emotional distress claims, which facts "sound convincingly in intentional conduct"]; *Agora Syndicate, Inc. v Levin*, 977 F Supp 713, 715 [1997] ["if the factual allegations of the complaint sound in intentional tort, arbitrary use of the word 'negligence' will not trigger an insurer's duty to defend"]).

Accordingly, the order of the Supreme Court, New York County (Walter Tolub, J.), entered October 18, 2001, which granted defendant's motion for summary judgment dismissing the declaratory action and denied plaintiff's cross motion for summary judgment, should be reversed, on the law, with costs, defendant's motion denied, plaintiff's cross motion granted, and judgment granted declaring that plaintiff has no duty to defend or indemnify defendant in the underlying class action. The Clerk is directed to enter judgment accordingly.

NARDELLI, J. P., SAXE, SULLIVAN and ROSENBERGER, JJ., concur.

Order, Supreme Court, New York County, entered October 18, 2001, reversed, on the law, with costs, defendant's motion for summary judgment denied, plaintiff's cross motion for summary judgment granted, and judgment granted declaring that plaintiff has no duty to defend or indemnify defendant in the underlying class action. The Clerk is directed to enter judgment accordingly.