# Erie Insurance Exchange v. Muff

450

*Donald M. Grimes,* for plaintiff.
*Robert C. Ewing,* for defendants Bierling.
*Rudolph Chillemi,* for defendants Muff.

BURR, *J.,* July 23, 2003—The plaintiff, Erie Insurance Exchange, in this case of apparent first impression, appeals from the order requiring it to defend claims sounding in negligence against its insureds, the defendants, Tricia Kravchak Muff and Harry D. Muff, in the above-captioned declaratory judgment action arising from underlying Wrongful Death and Survival Act claims brought by the defendants, Jacob and Kelsey Bierling, charging the defendant, Tricia Muff with having "negligently, carelessly and/or recklessly" caused the death of their one-year-old daughter, Madison Bierling.[1] The

---

1. The underlying civil cause of action, *Jacob and Kelsey Bierling, and Jacob Bierling, as the Administrator of the Estate of Madison*

underlying action was filed August 24, 1999, subsequent to Mrs. Muff's criminal conviction on July 23, 1999, on charges of murder in the first degree, aggravated assault, and endangering the welfare of a child, in the Court of Common Pleas—Criminal Division, Delaware County, Pennsylvania, in the death of Madison Bierling. The referenced criminal conviction was affirmed. *Commonwealth of Pennsylvania v. Tricia Muff,* 779 A.2d 1220 (Pa. Super. 2001) (table). (A copy of the Superior Court's memorandum opinion is appended to plaintiff's motion for summary judgment as exhibit A.) Mrs. Muff's appeal from that decision to the Pennsylvania Supreme Court was denied. *Commonwealth of Pennsylvania v. Tricia Muff,* 568 Pa. 629, 793 A.2d 906 (2002) (table).

The civil complaint filed on their daughter's behalf by the defendants Bierling, alleges that Mrs. Bierling delivered Madison to Mrs. Muff's residence for babysitting purposes at approximately 6:15 a.m. on Tuesday morning, December 1, 1998, and that from this time until Mrs. Bierling left the Muff residence at 6:45 a.m., the child had no physical injuries. (Civil action complaint, *Bierling v. Muff,* no. 99-11038, exhibit B to the declaratory judgment complaint, ¶¶5-8.) The Bierlings contended that at 9:30 a.m. that morning, Mrs. Muff took Madison and her own child to the backyard of the home. After witnessing Madison experience some difficulty breathing due to asthma, Mrs. Muff picked up both children and ran to the back door of the house, where she

*Bierling, Deceased v. Tricia Muff,* is docketed at number 99-11038, with the Court of Common Pleas of Delaware County, Pennsylvania. A copy of the Bierlings' complaint is appended to plaintiff's declaratory judgment complaint as exhibit B.

tripped and caused Madison Bierling to fall and hit her head twice on the concrete patio steps. (Civil action complaint, *Bierling v. Muff,* no. 99-11038, exhibit B to the declaratory judgment complaint, ¶¶9-10.) The Bierlings claimed that Mrs. Muff neither called 911, nor otherwise sought medial attention for Madison, and that later the same day, while sitting in a recliner and attempting to feed Madison with a bottle, Mrs. Muff dropped the child to the floor "in an attempt to grab a cloth to clean milk off the infant child." (Civil action complaint, *Bierling v. Muff,* no. 99-11038, exhibit B to the declaratory judgment complaint, ¶¶11-12.) The Bierlings further allege in their complaint that, after Madison was dropped to the floor from the recliner, Mrs. Muff noticed that the child was in physical distress, but continued to avoid calling 911 and other appropriate professional medical personnel. (Civil action complaint, *Bierling v. Muff,* no. 99-11038, exhibit B to the declaratory judgment complaint, ¶13.) The Bierlings' complaint alleges that, "Tricia Muff phoned Madison Bierling's grandmother after the fall, but negligently failed to tell the grandmother of the incident," and, "[i]t was not until Kelsey Bierling returned to pick up her daughter at approximately 2:30 p.m. on December 1, 1998 that an ambulance was finally summoned at the insistence of Kelsey Bierling." (Civil action complaint, *Bierling v. Muff,* no. 99-11038, exhibit B to the declaratory judgment complaint, ¶¶14-15.)

Paragraph 16 of the Bierlings' civil action complaint specifically avers that, "[a]s a direct and proximate result of the negligence, careless and reckless actions and/ or inactions of the defendant Muff as aforesaid, or otherwise described within this [C]omplaint, Madison Bierling

suffered serious, permanent, painful and fatal injuries . . . ." (Civil action complaint, *Bierling v. Muff,* no. 99-11038, exhibit B to the declaratory judgment complaint, ¶16.) The Bierlings again allege, in a section of their complaint entitled, "Liability of the defendant," that Madison's injuries were "the direct and proximate result of the negligent, careless, and/or reckless actions and/or inactions of Tricia Muff which include, but are not limited, to the following:

"(A) Failing to take proper precautions by attempting to carry two infants at the same time.

"(B) Failing to follow basic standards of care, by running over hard surfaces and up stairs while attempting to carry two infants at the same time.

"(C) Failing to take proper precautions and prevent possible harm to plaintiff's decedent Madison Bierling by running over ground that defendant Muff was aware was uneven.

"(D) Failing to take proper precautions and prevent possible harm to plaintiff's decedent Madison Bierling by running up steps that defendant Muff was aware possessed a lip and presented a hazard.

"(E) Failing to take proper precautions and permitting the plaintiffs' decedent Madison Bierling to fall from her grasp and strike the ground, while defendant Muff was running.

"(F) Failing to promptly notify the proper emergency medical services after plaintiff's decedent, Madison Bierling, fell from her grasp and struck her head upon hard surfaces.

"(G) Failing to contact emergency medical services when plaintiff's decedent, Madison Bierling, was in dis-

tress including being overly tired and was not breathing well.

"(H) Failing to obtain proper training in medical procedures, including knowing when to call for trained medical assistance.

"(I) Failing to promptly advise the decedent Madison Bierling's mother plaintiff Kelsey Bierling that decedent Madison Bierling had fallen and struck her head. Defendant Muff waited several hours after the fall to advise plaintiff Kelsey Bierling of any problem with the child. Had Tricia Muff sought immediate medical attention, the decedent, Madison Bierling, would have survived her injuries.

"(J) Negligently dropping Madison Bierling on the floor in an effort to clean the infant.

"(K) Failure to provide adequate care to plaintiff's decedent, Madison Bierling, by placing her in a crib after known trauma without adequate medical attention, while the child had reduced movement and continued breathing difficulties.

"(L) Failure to provide adequate care to plaintiff's decedent, Madison Bierling, by ignoring signs of distress exhibited by the child, when defendant Muff went to wake her up from her nap.

"(M) Failing to provide an accurate description of the days [sic] events regarding the trauma to Madison Bierling, to her mother and medical personnel in a timely manner so as to prevent further injury to the child.

"(N) Negligent care and supervision of the children and Madison Bierling.

"(O) Such other acts of negligence, carelessness and/ or recklessness as will be revealed during the course of discovery and throughout this litigation." (Civil action

complaint, *Bierling v. Muff,* no. 99-11038, exhibit B to the declaratory judgment complaint, ¶18, subparagraphs A through O.)

It is facially patent from the pleadings that the entirety of the Bierlings' claims against Tricia Muff sound in negligence. To counter plaintiff's contention that the pleadings were purposely intended to circumvent the intentional tort exclusion of the subject insurance policy, defendants allege that no claim has been made to recover for the intentional homicide, but that Tricia Muff's negligent acts, for which the underlying policy provides coverage, include "running and dropping Madison Bierling on the outside steps [to Muff's home], "dropping Madison Bierling to the floor inside the home when cleaning her," and "failing to call for medical attention immediately, which was a contributing factor in her death." (Pretrial statement of defendants Jacob and Kelsey Bierling, p. 2.)

Plaintiff filed this action seeking declarations that Tricia Muff expected and intended her acts to result in the death of Madison Bierling, thereby taking her conduct outside the coverage of the policy; that plaintiff thus has no duty to defend or indemnify Tricia Muff under the subject homeowners insurance policy or in the underlying action of *Bierling v. Muff,* Delaware Court of Common Pleas, civil action number 99-11038; that Tricia Muff is collaterally estopped from relitigating the issues of her intent to commit the acts which resulted in Madison Bierling's death; and that Tricia Muff's acts on December 1, 1998 do not constitute an "accident" or "occurrence" as defined in the subject insurance policy. (A copy of the subject policy is included in plaintiff's hear-

ing exhibit book at exhibit P-3.) Plaintiff asserted entitlement to this relief from the wording of Pennsylvania Criminal Statute 18 Pa.C.S. §2402(a), which states that "a criminal homicide constitutes murder in the first degree when it is committed by an intentional killing," with "intentional killing" defined in section (d) thereof as "[k]illing by means of poison, or by lying in wait, or by any other kind of willful, deliberate and pre-meditated killing." 18 Pa.C.S. §2402(a) and (d). Plaintiff also sets forth in its complaint the following provisions of the subject homeowners insurance policy which purportedly exclude relief in these circumstances. It will be noted in italics following any of the cited provisions where plaintiff's wording differs with the actual language of the policy, which is appended as exhibit C to the declaratory judgment complaint:

**"Policy definitions:**

"'**bodily injury**' means physical harm, sickness or disease, including mental anguish, and includes care, loss of services, or resulting death . . . .

"'**occurrence**' means an accident, including continuous or repeated exposure to the same generally harmful conditions.

"'**personal injury**' means injury arising out of:

"(1) **bodily injury;** . . .

**"Section II—Home and Family Liability Protection Personal Liability Coverage—Our Promise**

"We will pay all sums up to the amount shown on the **declarations,** which **anyone we protect** becomes legally obligated to pay as damages because of **personal injury** or **property damage** resulting from an **occurrence** dur-

ing the policy period. We will pay for only **personal injury** or property damage covered by this policy. *(The underlining of the word 'occurrence' in this paragraph was added by the plaintiff. It does not appear in the policy itself. See page 13 of the policy, appended as exhibit C to the declaratory judgment complaint.)*

"**What We Do Not Cover—Exclusions**

"Personal Liability Coverage

"Medical Payments and Other Coverage

"We do not cover under *Personal Liability Coverage* and *Medical Payments to Others* Coverage:

"(1) **Personal injury or property damage** expected or intended by **anyone we protect,**

"(9) . . . **personal injury** or **property damage** which arises out of *[the]* corporal punishment or physical or mental abuse by **anyone we protect.**

"(12) **personal injury** to you and if residents of your household, your relatives, and persons under the age of 21 in your care or in the care of your resident relatives." (Policy provisions cited as grounds for relief in paragraph 14 of the declaratory judgment complaint.) *(It is here noted that in listing the last three policy provisions, plaintiff failed to indicate that those numbered 1 and 9 relate to the exclusion of Personal Liability—Medical Payments to Others coverage, and that provision number 12 relates solely to the exclusion of Personal Liability Coverage. See pages 12 through 14 of the policy, appended as exhibit C to the declaratory judgment complaint.)*

Plaintiff references in paragraph 15 of the complaint a "reservation of rights," appended as exhibit D thereto

and submitted as plaintiff's hearing exhibit P-2. This document, which is dated December 2, 1999, and addressed to the Muff defendants, bears the signature of plaintiff's claims adjuster, Tammy Bell, and cites to the foregoing policy provisions as grounds for "concern," and also points to an exclusion for personal injury or property damages arising out of an insured's business pursuits, including incidental business activities such as baby-sitting allegedly according to a policy provision numbered 2(d) in the section entitled "Personal Liability—Medical Payments to Others" coverage. However, Miss Bell clearly misconstrues that section, which in fact reads:

"**Medical Payments to Others Coverage**

"We do not cover under *Personal Liability Coverage* and *Medical Payments to Others Coverage:*

"(2) **Personal injury** or **property damage** arising out of **business** pursuits of **anyone we protect.**

"**We** do cover: . . .

"(d) incidental **business** activities of **anyone we protect.** These include, but are not limited to, baby-sitting, caddying, lawn care, newspaper delivery and other similar activities." (See policy's section on "Personal Liability Coverage—Medical Payments to Others," p. 13.)

Miss Bell refers to an additional policy provision prohibiting coverage for injury caused by "willful violation of a law or ordinance" that is listed as item number 9 in a series of express exclusions from personal liability coverage on page 14 of the policy. However, that provision has never appeared in plaintiff's pleadings nor in any other of its proffers in this action, nor is it an issue in

this appeal. The parties stipulated to the authenticity of the letter at the hearing on plaintiff's summary judgment motion. (N.T. 29-30.)

The Honorable George Pagano, on October 24, 2001, entered an order in this action denying a motion for summary judgment filed by the Bierling defendants in which it was contended that the plaintiff owed a continuing duty to defend and indemnify the Muff defendants for the acts of Tricia Muff occurring on December 1, 1998. Thereafter, the plaintiff filed its own motion for summary judgment before this court alleging the contrary position, reiterating the allegations averred in the declaratory judgment complaint and claiming that Tricia Muff's testimony in her criminal trial should not be taken into consideration in disposition of the instant action because to do so would allow collusion between convicted murderers and victims' families to create negligence actions, and be contrary to public policy, pursuant to the case authority of *State Farm Mutual Automobile Insurance Co. v. Martin,* 442 Pa. Super. 442, 660 A.2d 66 (1995). (Plaintiff's summary judgment motion, ¶15.) In an apparent effort to emphasize this point, plaintiff supplied, as exhibit E to its motion for summary judgment, a 247-page transcript of Tricia Muff's criminal trial testimony and, at the hearing on the within motion, submitted the transcripts and records from her criminal trial as well as a request that the court take judicial notice of the entire record in the criminal matter. (5/17/02 N.T. 8-9.)

Plaintiff pleaded as alternate grounds for summary judgment in its favor a purported policy provision precluding coverage for injury to "a person under the age of 21 years in the care of the insured, here Tricia Muff."

(Plaintiff's summary judgment motion, ¶¶15-24.) However, it goes without saying that a reading of the alleged provision evinces this to be a bald misrepresentation of the wording thereof which, as was hereinabove noted, in fact states that coverage is precluded "for **personal injury** to you and if residents of your household, your relatives, and persons under the age of 21 in your care or in the care of your resident relatives."

Plaintiff argued at the hearing on the within motion that, despite proffering the entire record in Tricia Muff's criminal trial, that the court should not take into consideration any testimony or evidence contradicting the jury's purported conclusion that each and every one of the acts leading to the death of Madison Bierling was intentional in nature. (N.T. 9-10.) Plaintiff alternately argued that Mrs. Muff should be denied coverage for having been engaged in an "ongoing" as opposed to a merely "incidental" babysitting business at the time of Madison Bierling's death and that the section of the policy precluding coverage for persons under 21 years of age should be interpreted not as it appears, but in the "subjunctive," by inserting imaginary commas in the first phrase thereof, to wit:

"[t]here's three classifications of people. You, which is the named insured. Resident relatives, who is [sic] a second class of people, and the third class of people are persons under the age of 21 in your care, or in the care of resident relatives . . . ." (N.T. 16-17.)

However, contrasting plaintiff's self-serving interpretation of the policy's exclusion of such coverage with the actual wording of that exclusion, to wit: for "**personal injury** to you and if residents of your household,

your relatives, and persons under the age of 21 in your care or in the care of your resident relatives," unfortunately raises the specter of ambiguity which the law requires the court to construe against the maker of the policy, in this instance, the plaintiff. *Prudential Property and Casualty Insurance Co. v. McAninley,* 801 A.2d 1268 (Pa. Super. 2002).[2]

Regarding the issue of whether Tricia Muff's babysitting activities were more than merely "incidental" so as to be precluded from coverage under that provision, plaintiff's counsel urged the court to adopt his definition of the term "incidental" as connoting "activities of middle

2. Plaintiff inserted a further muddled reading of this policy provision in its trial memorandum submitted following the hearing on the summary judgment motion: "The policy provision excludes coverage for personal injury occurring to an insured, resident relative of an insured person under the age of 21 in the care of the insured or in the care of a resident relative of the insured. Here, Tricia Muff was the named insured. Madison Bierling was a person under the age of 21 in the care of Tricia Muff. Accordingly, there is no coverage for personal injury occurring to Madison Bierling under the policy of insurance issued by Erie Insurance Exchange to Tricia and Harry Muff." (Plaintiff's trial memorandum, p. 14.) Plaintiff went on in the memorandum to cite to a Missouri appeals court case, *American Family Mutual Insurance Co. v. Wemhoff,* 972 S.W.2d 402 (Mo. App. 1998), as supporting its definition of the word "care." However, this case involved the question of coverage of a child who was injured during a court-ordered overnight visitation in the care of her own father. The policy provision in issue excluding personal injury and medical expenses to an "insured," defined "insured" as the policy signatory's spouse and "relatives if residents of your household." An entirely separate sentence ensued, stating that, "[i]t [insured] also means any other person under the age of 21 in your care or in the care of your resident relatives." *American Family Mutual Insurance Co. v. Wemhoff,* 972 S.W.2d at 404. The instant exclusion is not so clearly worded, and it is certain that Madison Bierling was not in any sense a resident of the Muff household.

school or high school dependents . . . maybe a boy or girl gets \$15 to cut the neighbor's lawn as opposed to a business where a resident relative or a person goes out and secures jobs doing an activity that's included" within the policy's coverage, inasmuch as according to counsel, "incidental, to me, is not what someone does for their living." (N.T. 18.) Plaintiff's counsel argued that Tricia Muff "accepted baby-sitting jobs in lieu of not being in the workforce," claiming that, "[t]hat's not incidental." (N.T. 18.)

The Bierling defendants proffered argument at the hearing on plaintiff's motion that the actions of Tricia Muff on the day in question were discrete and that, with the exception of shaking the baby to cause her death, divisible into the individual acts of negligence pleaded in their complaint. (N.T. 35-39.) The Bierlings stated their agreement with the jury's determination that, "at some time during that day, Tricia Muff committed a homicide," along with their insistence that "the facts leading up to the homicide, [and some of the facts after the homicide] were not intentional acts." (N.T. 39.) Defendants referred to the criminal trial testimony of Dr. Cindy Christian, a child abuse expert, that it was neglectful for Tricia Muff to place Madison in the crib and not to call 911 right away. (N.T. 40.) Defendants averred that each of the criminal trial experts testified that some of Madison Bierling's injuries could have been explained by negligent conduct, and that such conduct was not decided by the jury. (N.T. 41-42.) Defendants insist that collateral estoppel would prevent them only from asserting that shaken impact syndrome was a negligent act. (N.T. 42.) Defendants countered plaintiff's contention that Tricia

Muff was running a baby-sitting business with testimony from Madison's father, Jacob Bierling that Mrs. Muff baby-sat Madison only on days when he had to work, perhaps one or two days per week, and never during the summer when her mother, who is a school teacher, was off, and that Tricia Muff baby-sat no other children during the period in which she was caring for Madison. (N.T. 46-47.)

The parties then stipulated to the admission of a copy of Pennsylvania's statute providing for the licensing of child day-care centers. (N.T. 45, 51.) Jacob Bierling testified to his knowledge of those provisions from performing inspections of township day-care centers in the line of duty and proffered his opinion that Tricia Muff's activities in that regard did not have to be licensed by the state. (N.T. 49-51.) According to Mr. Bierling, "baby-sitting under five children is not required to be licensed by the state." Madison's grandfather, Jacob Bierling Sr., the chairman of the Upper Darby Township Zoning Board and the next-door neighbor of Tricia Muff, then testified that the township's zoning code does not govern approval for baby-sitting arrangements for fewer than five children. (N.T. 57-58.)

The hearing on plaintiff's motion concluded with plaintiff's request for the court to review the entirety of Tricia Muff's criminal trial testimony "in order to see the contradictions contained [therein] with regard to the statements she gave, the assertions she made" with regard to her opinion that Madison Bierling's death was attributed to a fall, and the jury's purported rejection thereof. (N.T. 67.) Subsequent to the hearing, the parties submitted proposed findings of fact and conclusions of

law. Plaintiff alleged in its conclusions of law that it had no duty to defend or indemnify Tricia Muff for her actions on December 1, 1998, because the death of Madison Bierling was not an accident, but was a result both expected and intended by Mrs. Muff. (Plaintiff's proposed conclusions of law, ¶¶1-2, 10-12.) Plaintiff added contentions that the policy does not cover physical injury arising from corporal punishment or physical or mental abuse by an insured or to a person under the age of 21 in the care of the insured. (Plaintiff's conclusions of law, ¶¶3-4.) Plaintiff included a conclusion that Tricia Muff's criminal conviction collaterally estops her from denying the intentional and premeditated nature of her conduct on December 1, 1998, pursuant to the cited case authorities of *Shaffer v. Smith,* 543 Pa. 526, 530, 673 A.2d 872, 874 (1996); *Folino v. Young,* 523 Pa. 532, 568 A.2d 171 (1990); *Safeguard Mutual Insurance Co. v. Williams,* 463 Pa. 567, 574-75, 345 A.2d 664, 668 (1975); and *West American Insurance Company v. Kline,* 1998 WL 351576 (E.D. Pa. 1998) (memorandum opinion).[3]

---

3. Judge Robert F. Kelly, of the United States District Court for the Eastern District of Pennsylvania, declared in *Kline* that the defendant's guilty verdict on third-degree murder charges in a shooting incident barred his insurer's duty to defend him in a subsequent civil suit. *West American Insurance Company v. Kline, supra,* 1998 WL 352576 at *3. *Kline* is, therefore, not on point with the complexity of conduct under consideration in this suit. Plaintiff's reliance on *Shaffer* and *Folino* in this context is misplaced inasmuch as the defendants in those actions were estopped from relitigating the facts of their criminal convictions in subsequent civil actions, and not in declaratory judgment proceedings, rendering these authorities irrelevant on the issue of liability insurance coverage preclusion. *Williams,* a case involving claims of failure to pay insurance premiums, runs even further afield. This court has concluded, nevertheless, that the collateral estoppel theory espoused by the plaintiff would be more properly asserted in the un-

(Plaintiff's conclusions of law, ¶5-1; N.T. 60.) Plaintiff asserted that neither this court nor a second jury can inquire into the subjective state of mind or rationality of the criminal trial jury's verdict against Tricia Muff and carve out any part of the testimony and attribute to it anything other than an intent to commit to inflict fatal injuries on Madison Bierling, or statutory first-degree murder. 18 Pa.C.S. §2502. (Plaintiff's conclusions of law, ¶¶6-9.)

Plaintiff additionally averred that, "[i]t would violate public policy to require plaintiff, Erie Insurance Exchange, to defend in the underlying action that which has already been deemed to be criminal conduct," with citation to the case of *Germantown Insurance Company v. Martin,* 407 Pa. Super. 326, 595 A.2d 1172 (1991), *appeal denied,* 531 Pa. 646, 612 A.2d 985 (1992). Finally, plaintiff argued in its trial memorandum that the court must read the policy in issue to avoid ambiguities, but did not mention that any ambiguities on the face of the policy must be resolved in the defendants' favor under the law. *Carpenter v. Federal Insurance Company,* 432 Pa. Super. 111, 637 A.2d 1008 (1994). Conspicuously absent from plaintiff's contentions are citations to any case authorities or legal argument pertinent to the issue as to whether the pleading of the several discrete activities on the part of Tricia Muff occurring over a period of hours on December 1, 1998, which contributed to the demise of Madison Bierling, as opposed to the single physical assaults and shootings addressed in the available case authorities, may be deemed to have al-

---

derlying civil action than in the collateral action sub judice for declarative relief.

leged a negligence theory of liability which allows for a defense pursuant to the homeowners insurance policy issued by the plaintiff to the defendants, Harry and Tricia Muff. See *e.g., Stidham v. Millvale Sportsmen's Club,* 421 Pa. Super. 548, 618 A.2d 945 (1992), *appeal denied,* 536 Pa. 630, 637 A.2d 290 (1993) (table); *State Farm Fire & Casualty Co. v. Bellina,* 2003 WL 21246484 (E.D. Pa. 2003).

The order of this court of May 28, 2002, denying plaintiff's motion for summary judgment is recapitulated in its entirety below:

"And now, May 28, 2002, upon consideration of the record as established in this matter and after hearing thereon, it is hereby ordered and decreed that the relief requested by the plaintiff, Erie Insurance Exchange, in its complaint for declaratory judgment and motion for summary judgment is hereby **Denied** and **Dismissed.** This court finds that Erie Insurance Exchange has a duty to defend its insured, Trisha Muff, for the claims against her sounding in negligence in the matter of *Bierling v. Tricia Muff* in the Court of Common Pleas of Delaware County at no. 99-11038.

The filing of this order predated the holding in *Chalkey v. Roush,* 569 Pa. 462, 805 A.2d 491 (2002), in which the Pennsylvania Supreme Court deemed that, henceforth, where a trial court enters a declaratory order following a trial, the parties must file post-trial motions from that order. Plaintiff filed a post-trial motion in tandem with its direct appeal from the order in question, but the court rendered no decision on that motion.

Plaintiff submitted a lengthy and redundantly worded concise statement of matters complained of on appeal

consisting of 26 paragraphs mirroring the issues raised in its post-trial motion. Most of plaintiff's contentions may be distilled into the claim that the court erred in not ruling that the criminal trial jury's verdict against Tricia Muff utterly extinguished plaintiff's duty to defend and indemnify her. Plaintiff asserts error in this regard despite the nonexistence of precedent allowing for an "inferred intent" rule to be imposed under that circumstance. Plaintiff additionally contends error in the court's not finding that Tricia Muff was collaterally estopped in these proceedings from denying that the verdict in her criminal trial established that all of her acts on December 1, 1998 were intentional; in not prohibiting testimony and evidence in these proceedings contradictory to the criminal trial jury's verdict; in allowing Jacob and Jack Bierling to give hearing testimony relevant to the issue of coverage for personal injury to a minor under the age of 21 years in the care of an insured; in not concluding that this additional policy provision also precluded coverage for Madison Bierling's injuries suffered on December 1, 1998; in not finding an exclusion under a policy provision precluding coverage for an insured engaged in an ongoing business of child care; and in alleged violation of the collateral jurisdiction rule in issuing a ruling at odds with Judge Pagano's order denying defendants' prior motion for summary judgment alleging a duty on plaintiff's part to defend and indemnify Tricia Muff.

It is here noted emphatically that this court did not find a duty on plaintiff's part to indemnify the Muff defendants in the underlying action of *Bierling v. Muff,* Delaware County Court of Common Pleas, civil action no. 99-11038, nor does the order in question reflect such a ruling. Therefore, plaintiff's contentions and sugges-

tions to the contrary reflected in paragraphs 2, 18, 19 and 26 of its concise statement must be dismissed for being utterly unsupported in fact. In addition, the question as to whether the Muffs are entitled to a defense under this policy required the court to look no further than the pleadings in the underlying complaint. *Unionamerica Insurance Company Ltd. v. J.B. Johnson,* 806 A.2d 431 (Pa. Super. 2002); *Scopel v. Donegal Mutual Insurance Co.,* 698 A.2d 602 (Pa. Super. 1997). Therefore allegations of error in purported improper allowance, perusal, and interpretation of Tricia Muff's criminal trial record and testimony and/or of testimony and evidence presented by defendants in response to plaintiff's summary judgment motion that did not support the jury's verdict against Tricia Muff, are readily dismissible. (Concise statement, ¶¶6, 7, 8, 14, 15, and 20.) This is doubly so in light of plaintiff's own submission of Tricia Muff's self-serving statements to the police and her entire criminal trial record for the court's consideration in disposing of this motion. (Plaintiff's exhibits P-1 through P-9, and defendants' exhibit E submitted jointly by the parties.) Plaintiff's allegations of legal error in the admission of the entirety of evidence and argument relevant and supportive of the Bierlings' position in opposition to plaintiff's motion are, in a word, preposterous, especially where the plaintiff's evidence was entirely duplicative of defendants'. (Concise statement, ¶¶7, 12, and 23.) In addition, it is clear from this record that the defendants proffered hearing testimony relevant to the section of the subject policy dealing with whether or not Tricia Muff's baby-sitting activities were merely incidental, plus testimony concerning local and state licensing requirements for child care facilities, nei-

ther of which went to the issue of the exclusion of coverage for injury to a resident of the household under 21 years of age in the care of an insured. (Concise statement, ¶23.) Therefore, plaintiff's present objections to the testimony of Jacob and Jack Bierling could not have been, and certainly were not, founded on the grounds asserted here. (N.T. 48, 50, 56-57.)

With respect to the contentions set forth in paragraph 24 of the concise statement alleging error in the failure to find that Tricia Muff was engaged in more than "incidental" baby-sitting activities, the record hereinabove set forth clearly reflects that plaintiff's evidence was simply insufficient to prove a policy exclusion on that ground. Similarly, allegations of error in the failure to find that coverage was excluded for injury occurring to a person under the age of 21 years in the care of Tricia Muff, are unsupported in light of the fact that even plaintiff's evidence shows that the wording of this exclusion is ambiguous and must be construed against the plaintiff. The exclusion applies only to "residents" of the household under that age, and there has never been any averment or proof from the plaintiff that Madison Bierling lived with Harry and Tricia Muff. (Concise statement, ¶25.) In any event, Pennsylvania law reflects no licensure requirement for any such "business" involving the care of fewer than five children, further eliminating plaintiff's claim of an exclusion for "business activities for which a person is required to be licensed by the state." 62 P.S. §1001.

The contention that the court violated the coordinate jurisdiction rule in deciding that plaintiff owed a duty to defend Tricia Muff in the underlying action, where an-

other judge of this court previously denied this relief to the defendants on their motion for summary judgment is readily dismissible because summary judgment may be disposed of on a number of grounds, including prematurity for the granting of relief, or a lack of ripeness of the issues for resolution. (Concise statement, ¶22.) Judge Pagano's order is utterly silent as to the reasons for the disposition of the Bierling defendants' motion, but it is clear that Judge Pagano did not have the advantage of the fullness of the record and evidence presented to this court in the rendering of his decision. Furthermore, there is the question of defendant's standing to request that a duty to defend Tricia Muff be imposed on plaintiff where defendants were neither signatories to, nor insureds under the policy, nor were they nor their daughter residents of the Muff household on December 1, 1998. See *McNally v. Republic Insurance Co.,* 718 A.2d 301 (Pa. Super. 1998) (non-insureds cannot seek duty on the part of homeowners insurance carrier to defend third party for firing a handgun at non-insureds). Therefore, there was no violation of the coordinate jurisdiction rule by this court. *Martin Stone Quarries Inc. v. Robert M. Koffel Builders,* 786 A.2d 998 (Pa. Super. 2001).

A review of plaintiff's issues on appeal, including the claim of error in failing to adopt plaintiff's proposed findings of fact and conclusions of law, reflects mere dissatisfaction that the court came to a conclusion at odds with plaintiff's view of its own evidence as to whether it owed a defense to Tricia Muff, and not with admission of the evidence itself. (Concise statement, ¶¶16 and 17.)

Plaintiff does not dispute that there were no cases submitted by either party that were on point with the unique factual scenario of this case or that touched on the pre-

cise legal issue arising therefrom to be resolved. (N.T. 41-48.) Therefore, plaintiff's remaining viable issues are discussed in greater detail below.

## INSURER'S DUTY TO DEFEND

Plaintiff contends that the court erred in finding a duty to defend and in failing to find that Madison Bierling's injuries and death were precluded from coverage under the subject policy because they were not the result of an occurrence, were expected or intended by Tricia Muff, or arose under corporal punishment or physical abuse. (Concise statement, ¶¶1, 3, 4, 5, and 21.) Plaintiff claims error in the court's not implementing an "inferred intent" rule allowing for the intentional nature of Tricia Muff's conduct toward Madison Bierling on December 1, 1998, to be inferred from the results of her criminal trial on charges of first-degree murder, a rule not yet adopted in this Commonwealth. Those contentions arise in paragraphs 9, 10, 11, 12, 13, and 15 of plaintiff's concise statement of matters complained of on appeal.

The question whether a loss is covered by an insurance policy and, in cases such as this, whether an insurer has a duty to defend its insured, is a question of law which may be decided by the court. *Donegal Mutual Insurance Co. v. Ferrara,* 380 Pa. Super. 588, 592, 552 A.2d 699, 700 (1989). Pennsylvania law on the question of an insurer's duty to defend its insured is well settled. An insurer's duty to defend is a distinct obligation, different from and broader than its duty to indemnify. *Erie Insurance Exchange v. Transamerica Insurance Co.,* 516 Pa. 574, 533 A.2d 1363 (1987); *D'Auria v. Zurich Insurance Co.,* 352 Pa. Super. 231, 507 A.2d 857 (1986). An

insured has purchased not only the insurer's duty to indemnify successful claims which fall within the policy's coverage, but also protection against those groundless, false, or fraudulent claims regardless of the insurer's ultimate liability to pay. *D'Auria v. Zurich Insurance Co., supra,* 352 Pa. Super. at 235, 507 A.2d at 859. It is not the actual details of the injury, but the nature of the claim which determines whether the insurer is required to defend, and that duty is limited to only those claims covered by the policy. *D'Auria v. Zurich Insurance Co., supra,* 352 Pa. Super. at 235, 507 A.2d at 859. The insurer is obligated to defend if the factual allegations of the complaint on its face comprehend an injury which is actually or potentially within the scope of the policy. *Cadwallader v. New Amsterdam Casualty Co.,* 396 Pa. 582, 589, 152 A.2d 484, 489 (1959); *American States Insurance Co. v. Maryland Casualty Co.,* 427 Pa. Super. 170, 628 A.2d 880 (1993); *Stidham v. Millvale Sportsmen's Club, supra* (even though the insured shot and killed a person and pled guilty to third-degree murder, the insurer still had a duty to defend the civil case against the insured because (1) the civil complaint against the insured alleged negligent, careless, reckless, and/or willful conduct, and (2) evidence established that the insured was intoxicated at the time of the shooting incident). In *D'Auria v. Zurich Insurance Co.,* the Pennsylvania Superior Court held that, "[t]he major difference between indemnity and duty to defend cases is that in the latter, the complaint is the sole guide to the facts." *D'Auria v. Zurich Insurance Co., supra,* 352 Pa. Super. at 236, 507 A.2d at 860. "It does not matter if in reality the facts are completely groundless, false, or fraudulent. It is the face of the complaint and not the truth of the

facts alleged therein which determines whether there is a duty to defend." *D'Auria v. Zurich Insurance Co., supra,* 352 Pa. Super. at 235, 507 A.2d at 859.

An insurer's duty to defend and indemnify the insured may be resolved via declaratory judgment actions. *Erie Insurance Exchange v. Claypoole,* 449 Pa. Super. 142, 673 A.2d 348 (1996); *Aetna Casualty and Surety Company v. Roe,* 437 Pa. Super. 414, 650 A.2d 94 (1994); *Harleysville Mutual Insuance Co. v. Madison,* 415 Pa. Super. 361, 609 A.2d 564 (1992); *Uguccioni v. United States Fidelity and Guaranty Company,* 408 Pa. Super. 511, 597 A.2d 149 (1991). In such actions, the allegations raised in the underlying complaint alone fix the insurer's duty to defend. *Aetna Casualty and Surety Company v. Roe, supra,* 437 Pa. Super. at 422, 650 A.2d at 98; *Germantown Insuance Co. v. Martin,* 407 Pa. Super. 326, 595 A.2d 1172 (1991), *alloc. denied,* 531 Pa. 646, 612 A.2d 985 (1992); *United Services Automobile Association. v. Elitzky,* 358 Pa. Super. 362, 517 A.2d 982 (1986), *alloc. denied,* 515 Pa. 600, 528 A.2d 957 (1987). The duty to defend, however, is not activated by every allegation raised against the insured. *D'Auria v. Zurich Insurance Co., supra.* The nature of the allegations themselves, not the details surrounding the injuries suffered, are the basis upon which the insurer's duty to defend the insured arises. *D'Auria v. Zurich Insurance Co., supra,* 352 Pa. Super. at 234, 507 A.2d at 859. Thus, only allegations contained within the underlying complaint pertaining to injuries which are either actually or potentially within the scope of the insurance policy obligate the insurer to defend the insured. *Aetna Casualty and Surety Company v. Roe, supra,* 437 Pa. Super. at 422-23, 650 A.2d at 99.

An inferred intent rule, allowing for intentionality pursuant to the terms of an insurance policy to be inferred as a matter of law from the character of an insured's acts, has been imposed to date only in cases involving the sexual molestation of children and the sale of heroin. *Minnesota Fire and Casualty Co. v. Greenfield*, 805 A.2d 622 (Pa. Super. 2002), *appeal granted*, 820 A.2d 162 (Pa. 2003) (table) (no. 710 MAL 2002); *Aetna Casualty and Surety Company v. Roe, supra.* See also, *Wiley v. State Farm Fire and Casualty Co.*, 995 F.2d 457 (3d Cir. 1993) (predicting that the Pennsylvania Supreme Court would adopt and apply the inferred intent rule, as opposed to the subjective standard of determining intent from the standpoint of the insured, in the exceptional case of sexual child abuse by an insured adult). The instant plaintiff desires this court to infer Tricia Muff's intent to commit the acts alleged against Madison Bierling in her parents' complaint from the fact of Muff's criminal conviction on charges of first-degree murder. Significantly, however, plaintiff never acknowledges that Mrs. Muff was also convicted of aggravated assault and endangering the welfare of children. The elements of the crime of aggravated assault are: "intentionally, knowingly or recklessly caus[ing] injury to another under circumstances manifesting extreme indifference to human life." 18 Pa.C.S. §2702(a)(1). The elements of the crime of endangering the welfare of children are: "knowingly endanger[ing] the welfare of the child by violating a duty of care, protection or support." 18 Pa.C.S. §4304(a). Unlike the murder conviction, the assault conviction required the jury to find either intentionality, scienter or recklessness, the last of which would implicate negligence principles, and the conviction on endangering the

welfare of a child, on its face, required no finding of intentionality, and clearly involves considerations of negligence. The verdict thus reflects the jury's contemplation of the entirety of Mrs. Muff's actions on December 1, 1998, permitting, an inference from its verdict that there was conduct toward Madison Bierling that was not deemed to have been intentionally inflicted on the victim. Moreover, it is the law of this Commonwealth that a conviction in a prior criminal proceeding cannot preclude a victim from litigating the issue of the insured actor's intent where a determination of intent was not essential to the conviction. *State Farm Fire and Casualty Co. v. Dunlavey,* 187 F. Supp.2d 183, 188 (E.D. Pa. 2001) interpreting Pennsylvania law and citing to *Stidham v. Millvale Sportsmen's Club, supra.*

Since 1994, when *Aetna Casualty and Surety Company v. Roe, supra,* was decided, the inferred intent rule has not been applied to the conduct under consideration here, where child sexual abuse is not implicated. Indeed, the Third Circuit Court of Appeals cautioned in *Wylie* that, "[i]n cases that do not involve sexual child abuse, Pennsylvania has adopted a general liability standard for determining the existence of specific intent that looks to the insured's actual subjective intent." *Wiley v. State Farm Fire and Casualty Co., supra,* 995 F.2d at 460; *Aetna Life and Casualty Co. v. Barthelmy,* 33 F.3d 189 (3d Cir. 1994) (declining to extend the inferred intent rule to preclude coverage for an alleged date rape where insured subjectively believed he had the victim's consent). The rationale of the *Barthelmy* court in reaching that conclusion is instructive on the issues before this court: "our entire discussion in *Wiley* was limited to sexual assault on a child. The fact that McSparran's assertions might

conceivably give rise to criminal liability is not dispositive of an insured's intent to harm. Were it true that any potential criminal liability would give rise to an inferred intent to harm and, thereby, exclude coverage under a homeowner's policy, we would not have emphasized in *Wiley* that sexual abuse of a child is a uniquely harmful act calling for the narrowly applied inferred intent rule. We simply would have concluded that, because child molestation is a crime, intent to harm must be inferred as a matter of law. Instead, we recognized in *Wiley* that subjective intent generally is relevant, even when the insured has pleaded guilty to a crime. 995 F.2d at 466-67; see *Stidham v. Millvale Sportsmen's Club,* 421 Pa. Super. 548, 618 A.2d 945 (1992) (holding that, because insured's intent to harm remained a material factual issue, summary judgment was inappropriate, notwithstanding the act that insured shot and killed a stranger in an alcoholic blackout and pleaded guilty to third-degree murder)." *Aetna Life and Casualty Co. v Barthelmy, supra,* 33 F.3d at 192-93.

It is arguable that in insisting that Tricia Muff's first-degree murder conviction should result in automatic judgment in its favor on this motion, plaintiff desires for that result to obviate the need for consideration of contrary evidence as well as deliberation on the merits of this action and the other parties' rights as well. However, in *Stidham v. Millvale Sportsmen's Club, supra,* the Superior Court held that a guilty plea in criminal proceedings cannot substitute for a declaratory judgment action because all indispensable parties were not involved in that proceeding. *Stidham v. Millvale Sportsmen's Club, supra,* 421 Pa. Super. at 565, 618 A.2d at 954. It is this court's opinion that Tricia Muff's criminal conviction of

first-degree murder should not likewise eliminate the need for due deliberation of all of the evidence, legal argument and testimony in the underlying criminal proceedings against her.

Where a claim is potentially within the scope of an insurance policy, the insurer who refuses to defend at the outset does so at its own peril. *Cadwallader v. New Amsterdam Casualty Co., supra; Stidham v. Millvale Sportsmen's Club, supra.* In *Stidham,* the Pennsylvania Superior Court held that a declaratory judgment action, though not specifically required by law, might resolve at the outset the question of an insurer's duty to defend. *Stidham v. Millvale Sportsmen's Club, supra,* 421 Pa. Super. at 565, 618 A.2d at 954. The purpose of a declaratory judgment procedure is to furnish an expeditious remedy for the settlement of claims which indicate imminent and inevitable litigation and to provide practical help in settling controversies which could be determined more advantageously if settled promptly rather than at some future time when they would require adjudication. *Eureka Casualty Co. v. Henderson,* 371 Pa. 587, 92 A.2d 551 (1952). In addition, a declaratory judgment action provides a forum for all persons asserting claims on the issue of coverage between the insured and the insurer. *Stidham v. Millvale Sportsmen's Club, supra;* 41 Pa.C.S. §7540.

In order to determine whether plaintiff had a duty to defend Tricia Muff, it was necessary to compare the terms of the homeowner's policy with the nature of the allegations of the underlying complaint to determine whether, if the allegations were true, plaintiff might be obligated to provide coverage. The declaration of coverage on this

policy was limited by an exclusionary provision which states, in relevant part, that the policy does not apply to personal liability and medical payments to others for bodily injury or property damage "which is expected or intended by the insured." Pennsylvania courts have construed insurance policy provisions excluding coverage for "expected or intended injuries" in other disputes and, after a thorough exegesis of the "expected or intended harm" clause, the Pennsylvania Superior Court has held that these clauses are ambiguous as a matter of law and must be construed against the insurer. *Stidham v. Millvale Sportsmen's Club, supra*, 421 Pa. Super. at 563, 618 A.2d at 953; *United Services Automobile Association v. Elitzky, supra*, 358 Pa. Super. at 375, 517 A.2d at 989; *Germantown Insurance Co. v. Martin, supra*, 407 Pa. Super. at 332, 595 A.2d at 1175; *Donegal Mutual Insurance Co. v. Ferrara, supra*, 380 Pa. Super. at 594, 552 A.2d at 702. In *Stidham*, the Superior Court also held that the words "expected" and "intended" are synonymous when interpreting insurance exclusionary clauses, writing that "an insured intends as injury if he[/she] desired to cause the consequences of his[/her] act or if he[/she] acted knowing that such consequences were substantially certain to result." *Stidham v. Millvale Sportsmen's Club, supra*, 421 Pa. Super. at 563, 618 A.2d at 953.

In *Aetna Casualty and Surety Company v. Roe, supra*, a case involving child sexual abuse, the Superior Court did not reach the question of whether underlying allegations of negligent and reckless conduct in the complaint were coverable because those contentions had been made to support a claim for punitive damages for which the policy in question expressly precluded coverage. All other

contentions in the Roe complaint had alleged liability for actions that were intentional. The court noted that "[t]here is no functional distinction or difference between punitive damages which arise from intentional conduct or reckless conduct" because "[i]t is the conduct that is being punished, not the victim that is being compensated." *Aetna Casualty and Surety Company v. Roe, supra,* 437 Pa. Super. at 425, 650 A.2d at 100, citing to *Creed v. Allstate Insurance Co.,* 365 Pa. Super. 136, 141, 529 A.2d 10, 12 (1987), *appeal denied,* 517 Pa. 616, 538 A.2d 499 (1988). Such is not to say that a defense would not have been owed against the reckless conduct allegations had they been made in support of a claim for compensatory damages. *United Services Automobile Association v. Elitzky, supra,* 358 Pa. Super. at 375, 517 A.2d at 989 (defense required against claims of recklessness in defamation action seeking compensatory damages because they may have been covered by the policy). Therefore, under the holdings in *Aetna Casualty and Surety Company v. Roe, supra,* and *United Services Automobile Association v. Elitzky, supra,* a defense would be allowed in the instant case against the actions alleging Tricia Muff's conduct for which she was convicted of aggravated assault and endangering the welfare of children. It is to be remembered that *Aetna Casualty and Surety Company v. Roe* is the action in which the Pennsylvania Superior Court adopted the inferred intent rule for insurance for liability insurance cases involving the sexual abuse of a child by an insured adult.

Again, since *Aetna Casualty and Surety Company v. Roe* was decided, the inferred intent rule has been extended only to the sale of heroin. *Minnesota Fire and Casualty Co. v. Greenfield, supra.* There, the defendant,

Mr. Greenfield, had pleaded guilty to charges of involuntary manslaughter, abuse of a corpse, and delivery of a controlled substance after selling heroin to the victim who later died. While the voluntary manslaughter charge involved elements of recklessness and negligence, the statutes governing the additional charges against Mr. Greenfield did not. 18 Pa.C.S. §2504(a); 18 Pa.C.S. §5510; 35 P.S. §780-13. The victim's parents sued the defendant for "wrongful actions, neglect and negligence" leading to the death of their daughter, and the defendant's insurer, Minnesota Fire and Casualty Company, brought a declaratory judgment action seeking a determination that it was not required to defend or indemnify Mr. Greenfield in the civil suit. In applying the inferred intent rule to the sale of heroin, and not, it is interesting to note, to the crime of involuntary manslaughter, the Pennsylvania Superior Court wrote:

" 'A[n] [insurance] carrier's duties to defend and indemnify an insured in a suit brought by a third party depend upon a determination of whether the third party's complaint triggers coverage.' *Mutual Benefit Insuance Co. v. Haver,* 555 Pa. 534, 725 A.2d 743, 745 (1999). '[T]he particular cause of action that a complaint pleads is not determinative of whether coverage has been triggered. Instead it is necessary to look at the factual allegations contained in the complaint.' *Id.* (citing *Scopel v. Donegal Mutual Insuance Co.,* 698 A.2d 602 (Pa. Super. 1997); *Aetna Casualty and Surety Co. v. Roe,* 437 Pa. Super. 414, 650 A.2d 94, 98 (1994)).

"The Smiths claim the death of their daughter was not intended, and was therefore, the result of a negligent act. An intentional act is defined as one where the conse-

quences of the action are substantially certain. *Stidham v. Millvale Sportsmen's Club,* 421 Pa. Super. 548, 618 A.2d 945 (1992).

"As noted, the notion of inferred intent is accepted in Pennsylvania. Our court recognized the principle of inferred intent in *Aetna Casualty and Surety Co. v. Roe,* 437 Pa. Super. 414, 650 A.2d 94 (1994). In *Aetna,* we adopted the reasoning employed by the United States Court of Appeals for the Third Circuit in its decision in *Wiley v. State Farm,* 995 F.2d 457 (3d Cir. 1993). The basic concept of inferred intent is familiar to the law. The intent of an actor can be inferred from the nature of the act . . .

"the court in *Wiley* noted that the inferred intent to harm is an irrebuttable presumption. The criminalization of child abuse additionally serves to place the insured on notice that the societal harm from such conduct is inseparable from its performance. *Id.* at 102. (citations omitted) The logic and rationale behind the adoption of the inferred intent rule to child abuse cases seems equally applicable here.

"Once it is determined, strictly by examining the nature and character of the act in question, that it is appropriate to apply the inferred intent rule, then the actor's actual subjective intent becomes irrelevant. *Wiley* at 467.
. . .

"It is true that Smith's complaint clearly sounds against Greenfield in negligence. See *Fennell v. Nationwide Mutual Fire Ins. Co.,* 412 Pa. Super. 534, 603 A.2d 1064 (1992). Appellant's homeowner's policy provides Greenfield with coverage from claims that are for damages because of 'bodily injury or property damage caused

by an occurrence to which this coverage applies.' *Minnesota Fire and Casualty Home Plus Policy,* August 1990, §11, coverage E at 10. The policy defines occurrence as 'an accident, including exposure to conditions, which result, during the policy period, in (a) bodily injury; or (b) property damage.' *Id.* at 1. The policy defines bodily injury as 'sickness or disease, including required care, loss of services and death . . .' *Id.* The policy specifically excludes coverage for claims based on bodily injury 'which is expected or intended by the insured.' *Id.*" *Minnesota Fire and Casualty Co. v. Greenfield, supra,* 805 A.2d at 625-26. (footnote omitted)

The *Greenfield* court went on to discuss the illegality of the sale of heroin and the well-known personal and societal costs resulting therefrom as justification for allowing courts to infer intentionality from the commission of this dastardly and despicable crime. *Minnesota Fire and Casualty Co. v. Greenfield, supra,* 805 A.2d at 626-30. The court noted its disagreement with argument that Mr. Greenfield's not checking the victim's condition on the morning following the sale of heroin was a coverable negligent act and held that all consequences which flowed from the intentional original act of selling the drug to the victim were inseparable from it in nature. *Minnesota Fire and Casualty Co. v. Greenfield, supra,* 805 A.2d at 630.

It is clear from the wording of the *Greenfield* opinion that the extension of the inferred intent rule was solely to the sale of heroin, the defendant's first act in the chain of events which led to the victim's death. Here, it is unclear whether Tricia Muff's first act in the chain of events which led to the death of Madison Bierling was inten-

tional or negligent, and the jury's verdict convicting Tricia Muff of reckless child endangerment reflects that ambiguity. While public policy would seem to dictate that the intentionality requirement of first-degree murder and/or the fact of a criminal charge and/or conviction, or even clearly established claims of physical assault would place that act within the exclusion of this policy for "expected or intended" acts of an insured, the cases dictating that policy do not encompass the hours' long chain of separate and discrete actions leading to the victim's death that are present here. See *e.g., Erie Insurance Exchange v. Fidler,* 808 A.2d 587 (Pa. Super. 2002); *State Farm Mutual Automobile Insurance Co. v. Martin, supra; Germantown Insuance Co. v. Martin, supra; Donegal Mutual Insurance Co. v. Ferrara, supra; State Farm Fire and Casualty Co. v. Cooper,* 2002 WL 1287574 (E.D. Pa. 2001) (memorandum opinion interpreting Pennsylvania law); *West American Insurance Company v. Kline, supra; General Accident Insurance Co. v. Ciafra,* 36 D.&C.4th 385 (Phila. Cty. 1998); *Erie Insurance Exchange v. Fry,* 39 D.&C.4th 20 (Mercer Cty. 1998).

The United States District Court of the District of New Mexico dealt with a scenario that is factually similar to this action in the case of *State Farm & Casualty Co. v. Ruiz,* 36 F. Supp.2d 1308 (1999). There, the plaintiff homeowner's insurer commenced a declaratory judgment action wherein the district court found a duty to defend an insured in an underlying wrongful death action arising from the death of a child where allegations in the underlying complaint were ambiguous as to whether the child had died as a result of accidental or intentional injuries inflicted by the insured. In the instant action, the wrongful death that led to Tricia Muff's conviction for

first-degree murder is asserted as the injury, but the contentions all sound in negligence, thereby inserting an ambiguity as to the nature of other conduct by Tricia Muff against Madison Bierling still remaining to be resolved. The New Mexico Federal District Court, interpreting New Mexico law, determined that such circumstances necessitated the determination of whether a policy exclusion for expected or intended injuries by an insured should have been enforced, should be sorted out and determined in the underlying lawsuit, and not in the action for declaratory judgment.

The *Ruiz* case arose from events occurring at the child victim's father's home culminating in the child's, Patrick Munoz', death from traumatic closed head injuries. *State Farm & Casualty Co. v. Ruiz, supra,* 36 F. Supp.2d at 1310. The child's father, Patrick Ruiz, was subsequently convicted of child abuse as a result of young Patrick's death. The facts ascertained at Patrick Ruiz' criminal trial were:

"Defendant was at home with Patrick [Munoz], who was his son by a previous marriage; Paul Corona, who is the son of defendant's then current wife, Della, by her previous marriage; and Devonne Ruiz, who is defendant and Della's child by their current marriage. According to defendant, Patrick was playing outside and had fallen. When Patrick came in from outside, he had a little blood on his lip. Defendant wiped off the blood, gave Patrick some water, and put him to bed. When defendant checked on Patrick a few minutes later, his lips were blue and he was cold. Defendant then took Patrick to the hospital. On the way to the hospital, defendant flagged down paramedics. Notwithstanding the efforts of the paramedics and others who arrived at the scene, Patrick was unable

to be revived and was later pronounced dead. Several experts testified that Patrick's injuries were inconsistent with an accidental fall and were consistent with child abuse. A defense expert testified to the contrary—that Patrick's injuries were consistent with having fallen or with efforts at resuscitation and inconsistent with child abuse. According to the paramedics, defendant was standing by his vehicle with his arms crossed during their attempt to revive Patrick; defendant provided them with information only in response to direct questions. Based on the events on the day Patrick died, defendant was charged with child abuse by torturing, confining, or punishing (NMSA 1978, §30-6-1(C)(2) (Repl. Pamp. 1994)) [Abuse of a child consists of a person knowingly, intentionally or negligently, and without justifiable cause, causing or permitting a child to be: (2) tortured, cruelly confined or cruelly punished]; and, in the alternative, child abuse by permitting Patrick to be in a dangerous situation (§30-6-1(C)(1) [Abuse of a child consists of a person knowingly, intentionally or negligently, and without justifiable cause, causing or permitting a child to be: (1) placed in a situation that may endanger the child's life or health.]" *State v. Ruiz,* 119 N.M. 515, 892 P.2d 962, 964 (N.M. Ct. App. (1995)), *cert. denied,* 119 N.M. 354, 890 P.2d 807 (1995).

The plaintiff insurer in *Ruiz* refused a defense ab initio to Patrick Ruiz in the underlying action alleging negligence for his actions on the day Patrick died, reportedly from a fall. *State Farm Fire & Casualty Co. v. Ruiz, supra,* 36 F. Supp.2d at 1314. As is the case here, nothing in the complaint connected the defendant's criminal conviction with the death of the child, rendering it ambiguous as to whether the claim for wrongful death arose

from the same set of facts as the criminal conviction. *State Farm Fire & Casualty Co. v. Ruiz, supra,* 36 F. Supp.2d at 1314. The complaint in *Ruiz,* on its face, "could plead separate causes of action, one for death caused by a 'reported fall' as a result of Patrick Ruiz' unspecified negligent acts or failure to act, and one for a claim of negligence per se as a result of Patrick Ruiz' abuse of the child causing unspecified great bodily injury." *State Farm Fire & Casualty Co. v. Ruiz, supra,* 36 F. Supp.2d at 1314. State Farm contended that it owed no duty to defend Patrick Ruiz because the facts alleged failed to state a claim even arguably coming within the policy's coverage because they did not demonstrate an accident, but rather an intentionally and expected act of abuse by the defendant. *State Farm Fire & Casualty Co. v. Ruiz, supra,* 36 F. Supp.2d at 1314.

While recognizing the potential for "artful if not deceptive pleading to bring a complaint within the coverage of an insurance policy," the *Ruiz* court found a duty to defend based upon the conclusion that the statute under which Patrick Ruiz was convicted left room for the possibility that he acted with gross negligence and not with the intent to injure or kill his son, and that the allegations in the complaint did not clearly plead facts inconsistent with an accident or eliminating the possibility that the victim's injuries were not intended. *State Farm Fire & Casualty Co. v. Ruiz, supra,* 36 F. Supp.2d at 1315. Both in *Ruiz* and in the action sub judice, for all of the foregoing reasons, the allegations pleaded in the underlying complaints are potentially within the liability insurance coverage of the subject policies.

## CONCLUSION

An insurer is not required to defend a claim when it is apparent from the face of the complaint that none of the allegations potentially falls within the coverage of the policy. In cases in which the complaint alleges both conduct that potentially comes under the policy and conduct that does not, the insurer must defend the entire action. *Cadwallader v. New Amsterdam Casualty Co., supra,* 396 Pa. at 589, 152 A.2d at 489. The Bierlings' complaint alleges only negligent conduct, which allegations in and of themselves would ordinarily require a defense to this action. The plaintiff, however, urges an inferred intent rule which has not yet been adopted in this Commonwealth. In cases not involving child sexual abuse and the sale of heroin, Pennsylvania's general liability standard for determining the existence of intentionality looks to the insured's actual subjective intent, which is the standard which should be implemented in determining in this case whether or not the policy requires a duty to defend. *Titan Indemnity Company v. Cameron,* 2002 WL 1774059 (E.D. Pa. 2002) (interpreting Pennsylvania law). Although the multiplicity of events leading to the tragic death of Madison Bierling culminated in Tricia Muff's conviction of murder in the first degree, there has been no adoption of an inferred intent rule which would preclude a defense under the circumstances presented here. Tricia Muff was convicted not only of first-degree murder, she was also convicted of charges which include elements of negligent conduct that the jury must have recognized as existing on the day in question, or it would not have found her guilty on those counts as well. Finally, it is not certain whether the

first act leading to Madison Bierling's death, the contact with the steps leading into the Muffs' home, constituted negligence or not, and it is the considered opinion of this court that until that determination has been made, under Pennsylvania law, the plaintiff owes a defense to Tricia Muff in the underlying action. *Unionamerica Insurance Co. Ltd. v. J.B. Johnson, supra* (duty to indemnify is conditional obligation which arises only if, after trial on third-party claim, it is determined that the loss suffered is covered by the policy). *Erie Insurance Exchange v. Transamerica Insurance Co., supra,* 516 Pa. at 583, 533 A.2d at 1368 (duty to defend exists until such time as claim is confined to a recovery the policy does not cover).

The principles governing the interpretation of a contract of insurance are familiar and well settled. The task of interpreting a contract is generally performed by a court rather than by a jury. *Gonzalez v. United States Steel Corp.,* 484 Pa. 277, 398 A.2d 1378 (1979). The goal of that task is, of course, to ascertain the intent of the parties as manifested by the language of the written instrument. *Mohn v. American Casualty Co.,* 458 Pa. 576, 326 A.2d 346 (1974). Where a provision of a policy is ambiguous, the policy provision is to be construed in favor of the insured and against the insurer, the drafter of the agreement. *Mohn v. American Casualty Co., supra.*

The well-settled scope of appellate review for a grant of summary judgment states that summary judgment is properly granted where the pleadings, depositions, answers to interrogatories, and admissions, together with affidavits demonstrate that no genuine, triable issue of fact exists and that the moving party is entitled to judg-

ment as a matter of law. Pennsylvania Rule of Civil Procedure 1035.2(2); *Stidham v. Millvale Sportsmen's Club, supra,* 421 Pa. Super. at 558, 618 A.2d at 950. The trial court must examine the record in the light most favorable to the nonmoving party and resolve all doubts against the moving party. *Stidham v. Millvale Sportsmen's Club, supra.* The moving party's evidence must clearly exclude any genuine issue of material fact, and the trial court will be reversed only if there has been an error of law or a clear abuse of discretion. *Britamco Underwriters Inc. v. Weiner,* 431 Pa. Super. 276, 636 A.2d 649 (1994). The issue in this case involves the proper construction of an insurance policy which is resolved as a matter of law in a declaratory judgment action. 42 Pa.C.S. §7533; *Germantown Insurance Co. v. Martin, supra.* The standard of review in a declaratory judgment action is limited to determining whether the trial court clearly abused its discretion or committed an error of law, and the appellate court's judgment will not be substituted for that of the trial court if the court's determination is supported by the evidence. *State Automobile Mutual Insurance Company v. Christie,* 802 A.2d 625 (Pa. Super. 2002). Additionally, the trial court's decision will be reviewed as a decree in equity, and factual conclusions will not be set aside unless they are not supported by adequate evidence. *White v. Keystone Insurance Co.,* 775 A.2d 812 (Pa. Super. 2001).

With these standards in mind, it is respectfully submitted that the unique factual scenario of this case and the applicable law of the Commonwealth required this court to impose a duty to defend Tricia Muff upon the plaintiff, and that there was neither error nor abuse of discretion in that ruling.